[Civil No. 1389.  Filed May 4, 1915.]

[148 Pac. 289.]

# A. H. GIBSON and B. F. GIBSON, Appellants, v. M. J. McLANE, Appellee.

1. NEW TRIAL—PREMATURE MOTION—EFFECT.—A motion for new trial required by Civil Code of 1913, paragraph 590, to be made after rendition of judgment, being made before then, is ineffectual.

2. APPEAL AND ERROR—QUESTIONS REVIEWABLE—PREMATURE MOTION FOR NEW TRIAL.—The motion for new trial having been made prematurely, it is as though there had been none, so that under Civil Code of 1913, paragraph 1231, on appeal from the final judgment, overruling of the motion and the sufficiency of the evidence to sustain the verdict are not reviewable.

3. BROKERS—ACTION FOR COMMISSIONS—EVIDENCE.—As, if the contract of a broker with the sellers of cattle was not, as alleged by him, that they should pay him for effecting a sale, but, as alleged by them, that they should pay him if he gave them a "square deal" in classifying the cattle, he could not recover, not only because such contract, if intended to give defendants an advantage over the buyers, would be invalid, but also because it would not be the contract sued on, evidence offered by defendants as to plaintiff not executing the contract alleged and testified to by them was immaterial.

4. TRIAL—ERROR IN INSTRUCTIONS—CURE BY OTHERS.—Where charges, in a broker's action for a commission, made it necessary to recovery that he was the procuring cause of the sale, and that defendants agreed to pay the alleged sum for bringing them and the buyers together, the jury could not have been misled by the phrase in another instruction that it was necessary that plaintiff "had some connection with the sale."

5. APPEAL AND ERROR—INVITED ERROR—INSTRUCTIONS.—Defendants may not complain of instructions given for plaintiff; substantially the same instructions having been given at their request.

6. BROKERS—CONTRACT FOR COMMISSION—INCIDENTAL AND ADDITIONAL AGREEMENT—EVIDENCE.—Evidence, in an action by a broker for commissions for selling defendants' cattle, held to authorize submission to the jury of the question of any agreement of plaintiff that, if he received and classified the cattle for the buyer, he would, in so doing, treat the sellers fairly, being only incidental and additional to the main contract to pay plaintiff a certain commission for effecting a sale.

7. BROKERS—CONTRACT—RIGHT OF RECOVERY—INCIDENTAL AND ADDITIONAL AGREEMENT.—If the agreement of defendants was to pay plaintiff, a broker, a commission for finding a buyer for their cattle, and not for extending favors to them in receiving and classifying the cattle for the buyer, plaintiff's agreement to do the latter thing, being only incidental, and without consideration, would not defeat recovery on the agreement for a commission for selling, founded on a legal and valuable consideration.

8. TRIAL—COMMENT OF COURT—CROSS-EXAMINATION OF PARTY—HESITANT ANSWER.—Under the facts, *held,* it could not be said the hesitant and halting manner of a party in answering questions on cross-examination did not justify the comment, in the nature of a rebuke, by the trial court.

9. APPEAL AND ERROR—HARMLESS ERROR—REMARK BY COURT.—Rebuke by the court of the hesitant manner in which a defendant answered questions on cross-examination will not be considered prejudicial, where, without it, it seems that, under the whole evidence, verdict must have been for plaintiff.

APPEAL from a judgment of the Superior Court of the County of Gila. G. W. Shute, Judge. Affirmed.

Mr. Charles F. Whitcher and Mr. E. W. Rice, for Appellants.

Mr. Archibald C. McKillop and Mr. Jay Good, for Appellee.

ROSS, C. J.—This is an action for brokerage commissions. Appellee, as administrator, has been substituted for the plaintiff E. C. McCamey, who has deceased since the appeal. The appellants A. H. and B. F. Gibson were the defendants. The cause of action is set forth in two counts—one on contract and one on *quantum meruit.* At the close of evidence on motion of defendants, the plaintiff elected to go to the jury on the count on contract. The contract, as pleaded, briefly is: That the plaintiff was a broker engaged in the business of buying and selling cattle; that defendants employed him on or about January 25, 1912, to sell their herd of cattle, consisting of about 10,000 head, located in Gila and adjoining counties, and agreed that, if he would find a purchaser, they would pay him as such broker, for his service, the sum of ·$1,000; that between January 25, 1912, and February 1, 1912, he did find a purchaser satisfactory to defendants, who contracted to buy

and did buy and pay for said herd, consisting of 10,000 head, more or less.

The answer consisted of a general denial and a plea setting forth facts of avoidance; the same being, in substance, as follows:

"And allege and charge that every act and thing done or performed by said plaintiff in connection or with reference to said sale was done and performed as the agent and employee of the buyers of said cattle, and in their interest, and that plaintiff was fully paid and compensated therefor by said buyers, and that, by reason thereof, it was not competent for said plaintiff to make with the defendants, the sellers of said cattle, any such contract as he has alleged, and that such a contract, if made, would be and is void as against public policy."

The verdict of the jury was for the plaintiff for $1,000, the amount sued for. Thereafter, and before judgment was entered, the defendants filed their motion for a new trial, asking the court "to vacate and set aside the verdict of the jury herein rendered and filed September 27, 1913, and to vacate and set aside any judgment that may have been or may be entered by the court upon such verdict. . . . ";

The motion for new trial was continued several times, when on October 18, 1913, it was overruled and judgment ordered in favor of plaintiff upon the verdict. The order further directed: "Such judgment shall appear prior to application for new trial and proceedings thereon." The formal judgment signed by the presiding judge recites: "Judgment rendered this 27th day of October, A. D. 1913."

Appellants assign nine errors. No. 1 complains of a ruling excluding certain testimony offered. Nos. 2 to 6 complain of instructions given. No. 7 asserts that the court committed error in commenting upon the testimony of A. H. Gibson in the presence of jury while he was on the stand testifying for defendants. No. 8 complains of the order overruling the motion for a new trial; and No. 9 alleges the insufficiency of the evidence to sustain the verdict.

The plaintiff appellee makes the point against the consideration of the two last assignments, that the motion for new trial was premature; and it will be our first duty to dispose of that contention.

Paragraph 590 of the Civil Code of 1913, which was in effect at the time these proceedings took place, reads:

"All motions for new trial, in arrest of judgment, or to set aside a judgment, shall be made within ten days after the rendition of judgment."

The minute entries show that the motion for new trial was filed and denied by the court *before* and not *after* the rendition of judgment, and the motion itself shows that it was directed at the verdict and not the judgment. The statement in the minute entry that it should "appear" differently does not change the fact, but lends proof that no judgment had been rendered at the time the motion was overruled. And the record is not clear as to whether the judgment was actually rendered on October 18th or October 27th; the minute entry by the clerk giving the first date and the judgment as signed by the judge giving the last date. It is clear, however, that the motion for new trial was disposed of before any judgment was rendered or entered.

In *Daggs* v. *Howard Sheep Co.*, 16 Ariz. 283, 145 Pac. 140, we had under consideration a motion for new trial filed too late; the law then being contained in paragraph 1478 of the Revised Statutes of 1901. Paragraph 590, *supra,* is an amendment of paragraph 1478, but the question we are now considering is unaffected by the amendment. We decided in that case that "the terms of this law are mandatory and must be obeyed by the court as well as by the parties," citing several Arizona cases for the rule. The motion for new trial was not made at any time provided by law; that is, "after the rendition of judgment." The limit of time for making the motion is as definite as language can make it. It must be made "after," and, of course, "within ten days" of the rendition of judgment. A premature motion is therefore as ineffectual as one made too late. *Mahoney* v. *Caperton,* 15 Cal. 313; *Dominguez* v. *Mascotti,* 74 Cal. 269, 15 Pac. 773; *Harris* v. *Careaga,* 2 Cal. Unrep. 242, 2 Pac. 41; *Fountain Water Co.* v. *Dougherty,* 134 Cal. 376, 66 Pac. 316; *St. Louis* v. *Boyce,* 130 Mo. 572, 31 S. W. 594; 29 Cyc. 1040.

Under the provisions of paragraph 1231 of the Civil Code, the errors assigned (No. 8) to the overruling motion for new trial and (No. 9) to the insufficiency of the evidence to sustain the verdict are not properly before us, as in law no mo-

tion for new trial was ever made.  By that paragraph we
are authorized to review the action of the court in overruling
a motion for new trial, where the appeal is from final judg-
ment only, when such motion is made and denied, and it is
also provided therein that we may not consider the sufficiency
of the evidence to sustain a verdict or judgment in an action
tried by a jury, unless a motion for a new trial shall have
been made.

We now turn to the other assignments, taking them in their
order.

Assignment No. 1 is that the court erred in excluding the
testimony of Albert H. Gibson as to the manner in which
plaintiff cut the cattle.  The plaintiff had introduced evidence
tending to prove his contract of employment as pleaded.  The
defendants at the time of the offer of the above evidence,
under their general denial, were attempting to prove that the
real contract between them and plaintiff was that plaintiff
would act as the agent of the purchaser of the cattle in re-
ceiving and classifying them, and that he was to be paid the
thousand dollars only on condition that "he would treat de-
fendants' right on the cut of the cattle," as defendant Albert
H. Gibson put it.  Ben F. Gibson stated his understanding
of the contract to be:

"If you will treat us right and will let us bring the cattle
and put them in the corral, and then don't cut anything in
shipping condition, anything that would go under any kind of
a contract, we would be willing to pay you something."

J. N. Porter, who was present at the time of the making
the contract, and who was interested as mortgagee of the
cattle, gave his understanding of what was said:

"I said, 'What do you want, Mac?'  And he said, 'Well, I
want a thousand dollars.'  'Well,' I said, 'if you are not too
hard on cutting the cattle, possibly the boys can afford to give
you something.' . . . I said, 'If you will let the boys put the
cattle in the corral and cut the cattle back and not be annoy-
ing them in gathering the cattle, it seems to me they ought
to be able to pay you something.'  From that they did agree,
as I understood, to do it.  He said he ought to have something
to pay for helping to make the trade.  He was to cut the
cattle, and he would not be too hard on the boys in cutting
them."

XVII Ariz.—5

These statements were made in response to plaintiff's demand that he be paid for effecting a sale. The witnesses explained them as meaning that, in the receiving of the cattle, the plaintiff was to treat them "honest and fair"—to give them "a square deal." There was more said than we have quoted, but it was of the same general character and import, except when the witnesses undertook to construe their language. Their construction of their language was that the contract entered into was that defendants would pay plaintiff $1,000 if he gave them a "square deal," treated them "fair and honest," etc., and that the consideration of plaintiff's effecting the sale did not enter into the contract. The fact of such a contract, if one were made, is enough to damn it. It would be vicious in its conception and unenforceable. Proof of its execution or lack of execution by plaintiff would not make it more or less objectionable. On its face, it would show that plaintiff was trying to serve two masters at one and the same time. To "treat the defendants right" or give them "a square deal" in such a transaction necessarily carries the implication that the purchasers would not be treated "right," for, if it was fairness, justice and right that was sought, reliance might have been had upon the presumption that would ordinarily be indulged in such case. The measure and gauge of right in the cutting and classifying of the cattle should have been found in the contract of sale and not in the purchased favoritism of the receiving agent. We therefore are of the opinion that the manner of cutting the cattle by plaintiff was immaterial, and the ruling of the court rejecting the offered testimony was not error. The defendants were permitted to prove the contract as they understood it, and had they requested an instruction as to its legal effect, if established to the satisfaction of the jury, the court doubtless would have given it. But no such instruction was requested. The question, however, as to whether such a contract as claimed by defendants was ever made, was submitted to the jury by the court, with directions that no recovery could be had if such was the contract, because it would not be the contract sued on, and that a recovery must be had, if any, upon the contract set forth in the complaint.

The assignments 2 to 6, inclusive, are directed at five of the instructions given at the request of plaintiff. These in-

structions, considered alone and aside from other instructions given, would doubtless constitute error, and, when considered with the whole, are not entirely free from criticism or doubt. The first instruction objected to told the jury, in substance, that if they found by a preponderance of the evidence that defendants employed plaintiff to sell their cattle, and that plaintiff *"had some connection with the sale of said cattle,* and that at the time or just before the sale was consummated the defendants . . . agreed to pay plaintiff $1,000 for the services rendered by him in connection with the sale of said cattle, then, in that event, the plaintiff would be entitled to recover." It is said this instruction is bad because: (1) It is not based on testimony in the case; (2) it authorized the jury to find for plaintiff if he "had some connection with the sale of said cattle"; and (3) it did not require the jury to find that plaintiff performed any service in bringing about such sale.

The first criticism is made to apply to practically all the instructions objected to. The testimony on behalf of plaintiff shows that he not only "had some connection with the sale," but that he was the procuring cause, and this is admitted by defendants in their testimony; their only contention being that he was paid by the purchasers, and was to be paid $1,000 by them on condition that he received, cut and classified the cattle in a manner not to their injury. The other two objections to the instruction are fully covered by other instructions. For instance, the instruction next preceding this one advised the jury that, before plaintiff could recover, they should find from a preponderance of the evidence that plaintiff was a commission broker buying and selling cattle on commission; that defendants solicited him to sell their herd of cattle, consisting of 8,000 or 9,000 head; that the plaintiff was the procuring cause of bringing the defendants and the purchasers together; that a sale was made; and that defendants had agreed to pay plaintiff the sum of $1,000 for bringing the purchasers and sellers together. This instruction was given in different form on request of defendants. The jury must have understood that, before plaintiff could recover, it was obligatory upon him to show that he rendered service under the contract pleaded, and was, in fact, the efficient, procuring cause of the sale, and we do not think

it was possible for the jury to have been misled by the phrase italicized by us in the above instruction.

Assignments 5 and 6 challenge the correctness of two instructions covering another phase of the case. They state the proposition of law that a broker may accept or recover compensation from both the seller and purchaser, when his only duty is to bring them together to fix their own terms and they agree to it.´ And this is followed up with a concrete application of the facts in the case with the burden placed on the plaintiff to show that his contract falls within the terms of the law as stated. The same instruction, in substance, was asked by defendants and given by the court, with the addition that in such case both the purchaser and seller must be made acquainted with and consent to his acting in such double employment or else any agreement to pay him would be void.

Another assignment (3) has reference to the following instruction:

"You are instructed that if you believe from the evidence in this case that the defendants agreed to pay the plaintiff E. C. McCamey the sum of $1,000 as compensation for bringing together and aiding in bringing together the defendants and Gordon, Ironsides & Fares Company in the purchase and sale of their herd of cattle about the time charged in the complaint, and that the defendants A. H. and B. F. Gibson agreed to pay the plaintiff McCamey the sum of $1,000 for the services so rendered, but that, in addition to the services so rendered, the plaintiff agreed that, if he should receive and classify the cattle, he would give the defendants and the purchasers both alike a square deal in so classifying and cutting the cattle, then you are instructed that the additional services so required would not affect the contract to pay him for his service; and if you so find that the only limitation placed upon the contract or the only thing to be done was that the plaintiff, if he classed the cattle and received them, for the purchaser, would do the fair thing and give each a fair deal, the sum (same) would not affect the contract so entered into; and, if you should so find from a preponderance of the evidence, the plaintiff would be entitled to recover, and you will so find."

Several complaints are made of this instruction, only two of which we think deserve consideration, and they are that "it

assumes that the services to be rendered by appellee in classi-
fying and cutting the cattle were merely incidental or addi-
tional to the service to be rendered by him in bringing about
the sale,'' and that ''there is no testimony in the record that
such services were additional.'' In view of these objections
to this instruction, we have carefully examined the evidence,
and we find all through it that the contention of plaintiff was
that one and only one contract was entered into—the one set
forth in his complaint—and the defendants' contention was
that the only contract made was that they would pay the
plaintiff $1,000 on condition that he received, cut and classi-
fied the cattle for the purchaser, and in doing so treated them
''right,'' ''fair'' or gave them ''a square deal'' or would clas-
sify them ''honest and right.''

It is admitted by all the witnesses who were present when
the matter was discussed that the question of plaintiff's com-
pensation was first mentioned by plaintiff, and they also agree
that his words were, in effect, that he thought he ought to
have something for finding a buyer, and mentioned a thou-
sand dollars. Both of the defendants and Porter say that
their answer to his demand was, in effect, that, if he cut the
cattle fair, they would pay him $1,000, and that he responded
that he might not be sent by the purchasers to receive the
cattle. No witness stated that he agreed to accept defend-
ants' proposition. This conversation took place at the same
time and immediately after the price of cattle had been fixed
by defendants, and before the plaintiff had submitted the
proposition to the prospective buyers. Plaintiff had gone to
Globe to see defendants in response to a letter from them
offering to sell cattle. He had entered upon the service of
procuring a buyer, and, before proceeding further, was in-
terested in having his compensation fixed. In that view of
the facts, the court might well have concluded that what the
defendants now contend was the contract was only incidental
and additional to the main contract. One of defendants' in-
structions told the jury that ''plaintiff is only entitled to
recover upon proof by a preponderance of the evidence of such
contract as he alleges, and would not be entitled to recover
on an entirely different or collateral contract, even though
such different and collateral contract may appear from the
evidence before you and appear to have been related to or to

have arisen out of the same transaction. The plaintiff can only recover in this case upon proof by a preponderance of the evidence of the existence of a commission or brokerage contract, as alleged by him in his complaint.

Two theories were submitted: One that the receiving of the cattle was an additional burden or condition that was imposed or attempted to be imposed upon the plaintiff by defendants before plaintiff was to be paid; and the other that there was a "different or collateral contract" growing out of the same transaction. The jury was told in varying form, several times, that plaintiff must recover, if at all, on the contract alleged, and that he could not recover if the proof showed a different contract.

The other instruction objected to is:

"You are instructed that an agreement will be enforced even if it is incidentally or indirectly connected with an illegal transaction, provided it is supported by an independent consideration."

Like the other instructions that we have considered, it is not contended that this one does not state a correct proposition of law; the contention being that it is abstract, confusing and misleading.

As we have before observed, if the plaintiff had acceded to defendants' proposition, assuming its purpose was to secure to themselves some advantage over the purchasers of their cattle in classification, and that that was the consideration for defendants' promise to pay, the transaction would have been illegal; but if, as a matter of fact, the promise to pay was in consideration of the plaintiff's finding a purchaser of the cattle, and the agreement as to receiving and classifying the cattle was only incidental or additional, even though it might smell bad, it would not defeat a recovery. If, in fact, and that under the instructions was for the jury to determine, the understanding between the parties was that the plaintiff should be paid for finding the buyers and not for favors extended the sellers in the receiving and classifying the cattle, the plaintiff would be entitled to compensation, for the latter suggestion, even if acceded to, would have been without any legal consideration, whereas the former would have been founded upon a legal and valuable consideration.

The only assignment left is based upon certain remarks by the trial judge in the course of the cross-examination of defendant Albert H. Gibson. Of course, we cannot tell from the cold record whether these remarks by the court were inopportune or injurious, as might one present actively participating in the trial. The conduct of counsel and witness we can only imagine, while the trial judge could see, and in passing upon his rulings and comments we, to be just and fair, must take into consideration the immediate surroundings and influences springing directly out of the cross-examination. The objectionable remarks of the court occurred in the midst of the cross-examination, and after several direct questions had been asked, some of which had not been answered, either because of interruptions by defendants' attorney or because the witness did not choose to answer them yes or no. The court first admonished the witness as follows:

"Answer the question just as readily as you can, Mr. Witness. There is no use arguing over a substitute. If you know, answer. If you don't know, answer."

Other questions were asked with interruptions and arguments of counsel, when the following took place, and of which complaint is made:

"Q. And Mr. Porter said if you favor the boys a little I think they ought to give you something, did he? A. If— Q. Just answer that.

"Attorney for Defendants: I submit that the witness ought to be permitted to answer the questions without being interrupted.

"The Court: The trouble is the witness apparently is not capable of expressing himself directly.

"Attorney for Defendants: As I have stated, the witness has an impediment in his speech at times.

"The Court: It does not seem to be due so much to an impediment as it seems simply a means of evading a direct answer. . . .

"Q. It is a fact that you and your brother said to McCamey, in answer to his question to you and your brother, 'What am I to get out of this if you should close this deal?' 'If you favor us some in the way of cutting and grading we will pay you a thousand dollars?' A. Yes, we told him that. Q. You told him that, didn't you? A. Yes, we told him we would

pay him a thousand dollars. Q. And you intended to pay him until you found out or believed that Booker paid him for making the sale, didn't you?

"The Court: Answer the question, Mr. Witness.

"Attorney for Plaintiff: Mr. Gibson, are you afraid to answer that question because you are afraid it will hurt your case?

"Attorney for Defendants: I submit that is unfair.

"The Court: It is not for him."

We think the language used by the court had better not been said, but we cannot say that the witness' hesitant and halting manner did not justify it. He was testifying in his own behalf, and his own interest demanded, to the questions put, frank and ready answers. It is true his attorney told the court that he "had an impediment in his speech sometimes," but the court was of a different opinion formed from observing the witness; and, while we think his rebuke should have been more cautious and guarded, we cannot say that it was not justified. If such comment had been directed at a witness testifying in behalf of defendants, over whom defendants had no control, the situation would be different and might call for a different ruling, but here the defendant's own conduct provoked from the court the statements criticised.

The defendants argue this point with great earnestness, ability and zeal and refer us to many court decisions which apparently demand or would justify a reversal of this case, but in all the cases the consideration that prompts the court to reverse is not error simply, but prejudicial error. If, notwithstanding error may have been committed by the court's comment, it still appears from the whole record that no other verdict than the one found would have resulted in the absence of such comment, it is our duty to affirm the judgment.

That the defendants had agreed to give plaintiff $1,000 was not a contested question. The only question was as to the consideration for the promise. Was it for effecting a sale of defendants' cattle, or something else? Regardless of the comment ·of the court on Albert H. Gibson's testimony or conduct, it seems to us the verdict must have been, ·under the whole evidence, in favor of plaintiff.

Judgment is accordingly affirmed.

FRANKLIN, J., concurs.

CUNNINGHAM, J., Specially Concurring.—The appellant prematurely filed a motion for a new trial. Because the motion was filed at that stage of the proceedings (that is, before a judgment was rendered in the case upon which to operate), the motion was ineffective to call forth the jurisdiction of the court to determine the questions triable upon the hearing of a motion for a new trial. Until judgment was rendered, the parties could not anticipate what that judgment would be, but they must presume that the law would dictate a proper judgment. Until an improper or erroneous judgment was rendered, no grounds for a motion for a new trial existed. Therefore a motion for a new trial, made before judgment rendered, had nothing upon which to operate, and was ineffective for any purpose.

The scope of the review by this court extended to and was limited by the judgment-roll. I do not concur in the apparent holding of the majority opinion, to the effect that under paragraph 1231 of the Civil Code of 1913, this court is required or empowered to review all matters transpiring at the trial when such matters have been assigned as error. Paragraph 1231, *supra,* is as follows:

"Upon appeal from a final judgment the court shall review all orders and rulings made by the court below, which are assigned as error, whether a motion for a new trial is made or not. If a motion for a new trial is made and denied, the court may, on appeal from the final judgment, review the action of the court below in denying the motion, though no appeal be taken from the order denying the motion for a new trial: Provided, that on appeal from a final judgment the supreme court shall not consider the sufficiency of the evidence to sustain a verdict or judgment in an action tried before a jury unless a motion for a new trial shall have been made."

If, as clearly indicated by the statute, the court may review the order of the lower court refusing a new trial only when a motion for a new trial has been made and denied, then it follows that, when no motion for a new trial was made, the court has no power to review the grounds for a new trial.

The matters of admission and rejection of evidence and the giving and refusal of instructions, and the conduct of the judge of the court upon the trial, are assignable as grounds for a new trial, and properly reviewable by the trial court

upon the hearing of the motion. A failure of a party to present such questions to the trial court by a timely motion has always been considered a waiver of error, if any. The waiver is complete when the time for making the motion expires, and no motion is made, or the particular ground is not alleged. In my opinion the matters of admitting and rejecting evidence, giving and refusing instructions, and the conduct of the judges of the court, are not such orders and rulings made by the court below as, contemplated by the statute, could be reviewed on appeal, when assigned as error, whether a motion for a new trial was made or not. If they are considered such, then the result is that the parties may apparently waive them as to the court below by making no motion for a new trial, but on appeal they may be revivified by assigning them as error, and therefore this court must review them as if reviewing a motion for a new trial, not in an appellate capacity, but acting as a court of the first instance. The questions raised have never theretofore been presented to any court. No other court has had the opportunity to pass upon them, and they, for the first time, are raised in an appellate court, which is clearly contrary to the purposes of this court. I am clearly of opinion that an appellant must present to this court for review a record fairly showing matters not waived, but live, contested matters, otherwise this court has no authority to consider them. This view is borne out by the statute itself. The sufficiency of the evidence to sustain a verdict or judgment is neither an order nor a ruling; yet it is a ground for a new trial the same as the question of jurisdiction of the court. When the cause is tried to a jury, even the question of the sufficiency of the evidence to sustain the verdict or judgment cannot be reviewed, even when assigned as error, unless a motion for a new trial has been made and refused. It is not the assignment of error alone that gives the court the power to review, but also, the matters controverted, the issues between the parties must exist as the subject matter of review, and the assignment is the authorized vehicle to deliver the subject matter upon which the court acts. The subject matter thereby delivered must be alive, not dead, and matters which have once been waived, as they undoubtedly have been in this record, are dead, and they may not be resuscitated merely

by presenting ·the vehicle upon which they might have approached while living.

For the reason no reversible error appears upon the judgment-roll, I concur in the order affirming the judgment.