[Civil No. 1551.    Filed April 18, 1918.]

[172 Pac. 281.]

WM. C. ELLIS, W. W. EDWARDS, O. E. PLATH, and PETER MOHN, Appellants, v. FIRST NATIONAL BANK OF GLOBE, a Corporation, Appellee.

1. NEW TRIAL — TIME FOR APPLICATION — CONSTRUCTION OF STATUTE.—Under Civil Code of 1913, paragraph 590, providing that motions for new trial shall be made after rendition of judgment, a motion before rendition of judgment was premature and ineffectual.

2. APPEAL AND ERROR—REVIEW—MOTION FOR NEW TRIAL.—Civil Code of 1913, paragraph 1231, providing that in an appeal from a final judgment in an action tried before a jury, the supreme court shall not consider the sufficiency of evidence unless a motion for a new trial shall have been made, held to preclude consideration of sufficiency of evidence, where motion was ineffectual because made before rendition of judgment, contrary to paragraph 590.

3. EVIDENCE—BEST OR SECONDARY EVIDENCE—AMOUNT DUE ON NOTE.—
In an action by bank on pledged note given as security for dis-
counted note subsequently renewed, parol evidence as to state of in-
debtedness at time of renewal without production of original note
is not in violation of best evidence rule.

4. TRIAL—ORDER OF PROOF.—Cross-examination of plaintiff's witness to
develop a matter of defense set up in the answer, and which defend-
ant is required to bring out as a part of his own case, is properly
excluded.

5. BANKS AND BANKING—BONA FIDE PURCHASERS—NOTICE.—That the
agent of a bank discounting a note knew that the payee of the note
did not have sufficient money in bank to erect a building *held* in-
sufficient to charge the bank with knowledge that collateral notes
taken by the bank were obtained by such payee on fraudulent repre-
sentations that it had sufficient funds for such purpose.

6. TRIAL—INSTRUCTIONS—CONSTRUCTION AS A WHOLE.—An instruction
that ignores the principle that notice to an agent is notice to the
principal *held* no error, where instructions as a whole fairly and
accurately presented the law applicable to the case.

7. TRIAL—INSTRUCTIONS—WEIGHT OF EVIDENCE.—Instruction that puf-
fing statements, made by promoters or agents selling stock as to the
value of the stock as an investment, would not constitute a defense,
*held* not a comment on the evidence, and, in view of other instruc-
tions defining false and fraudulent representations, could not have
been misunderstood by the jury.

8. ACTION — CONSOLIDATION — JUDGMENT.—Where a bank brought sep-
arate actions on pledged notes against seven defendants, and upon
motion of defendants, the issues being the same, the suits were con-
solidated, a single verdict and judgment is sufficient.

9. TRIAL—VERDICT—ASCERTAINMENT OF AMOUNT OF RECOVERY.—Where
in consolidated actions on notes transferred to plaintiff as collateral
for another note larger in amount than any of the notes sued on,
it being stipulated that, if plaintiff was entitled to recover, the
amount due should be shown by the face of the notes in suit, defend-
ant's objection that the jury in its verdict for plaintiff failed to find
the amount due on the collateral notes was untenable.

10. BILLS AND NOTES—BONA FIDE PURCHASERS.—In view of Civil Code
of 1913, paragraphs 4201, 4202, a purchaser of negotiable paper in
good faith and without knowledge of infirmity or defects is not re-
quired to make original and independent investigation of the cir-
cumstances surrounding the issue of the paper and the relations of
the parties thereto.

[As to title and right of *bona fide* holder of stolen negotiable in-
strument, see note in **Ann. Cas. 1916A, 603.**]

APPEAL from a judgment of the Superior Court of the county of Maricopa.   R. C. Stanford, Judge.   Affirmed.

Messrs. Struckmeyer & Jenckes, for Appellants.

Miss Alice M. Birdsall and Mr. A. C. McKillop (Mr. J. F. Goldsberry, on the Brief), for Appellee.

FRANKLIN, C. J.—Felix Lamm and John Armer were each indebted to the Realty Securities Company, a corporation, in the sum of $5,000.   This indebtedness was evidenced by the promissory note of each of said persons given to the corporation.   The Realty Securities Company, wishing to realize upon the indebtedness, entered into negotiations with the appellee for the sale and purchase of said notes.   The appellee agreed to purchase the notes, less the customary discount, provided the Realty Securities Company would furnish an acceptable indorser or collateral; the character of appellee as a national bank requiring this.   The name of D. J. Peter was suggested as the indorser of the paper, which was agreeable to the appellee, but, upon being requested to indorse the notes, he refused.   It was thereafter agreed that the Realty Securities Company should put up as collateral certain unmatured, negotiable promissory notes held by it, the same, however, first to be passed upon as to their sufficiency by Mr. Lloyd B. Christy of the Valley Bank of Phoenix.   Mr. H. J. Brazee, the secretary of the Realty Securities Company, delivered the notes to the Valley Bank for and on account of the appellee, and, Mr. Christy, having examined them, reported favorably to the appellee as to the sufficiency of the collateral. Thereupon appellee paid to the Realty Securities Company the face value of the Armer and Lamm notes, less the current rate of interest at the time.

Among the notes so pledged to appellee as security for the payment of the Armer and Lamm notes were those of the seven defendants in the superior court, to wit, W. C. Ellis, W. W. Edwards, O. E. Plath, Peter Mohn, Joseph A. Lobit, H. A. Hammels, and Harry T. Duffy.   These notes were all unmatured, negotiable paper at the time of the bank's purchase.

The Lamm note was paid in due course.   A portion of the Armer indebtedness evidenced by his note to the Realty Secur-

ities Company, and which was purchased by appellee, was also .paid, but, there remaining an unpaid balance thereof, the former note was taken up by Armer with his negotiable promissory note, evidencing the balance of his indebtedness in the sum of $4,375, and as a renewal of the former note to the extent of the balance so due and unpaid. At the time of the trial there remained due and unpaid of the indebtedness evidenced by the renewal note of Armer the sum of $2,722.22 as principal, and $443.36, interest.

Seven suits were brought by appellee, one against each of the seven defendants, to recover on their several promissory notes so pledged as collateral to secure the unpaid balance due on the indebtedness evidenced by the Armer renewal note. On motion of the defendants, agreed to by plaintiff, these seven suits were consolidated for trial, the issues presented by the pleadings and the evidence offered in support thereof being precisely the same in each case except as to the particular amount due and unpaid on each of the seven notes. The uncontradicted testimony left only the question raised by the answers of the respective defendants as to whether or not the appellee was the holder of the several notes in good faith, that is to say, whether the Realty Securities Company obtained the notes of the seven defendants by false and fraudulent representations, and, if so, whether or not the appellee had actual knowledge of the infirmity or defect, or knowledge of such facts that its action in taking the notes amounted to bad faith.

The consolidated action was tried to a court and jury and a verdict found for the plaintiff below, which is the appellee here. There was but one form of the verdict rendered by the jury, which form, however, embraced and designated the particular names of the seven defendants and the numbers of the respective actions so consolidated for the trial. Upon the verdict of the jury, the judgment of the court was entered against each of the seven defendants for the amounts shown to be due and unpaid upon their respective notes. This appeal is prosecuted by the defendants Ellis, Edwards, Plath and Mohn. The other defendants do not appeal.

On the record presented to this court, we are precluded from considering the sufficiency of the evidence to sustain the verdict and judgment, because the action was tried before a jury and the motion for a new trial was not made within the time fixed by the statute. The motion for a new trial in this case

was made before the rendition of the judgment. Paragraph 590 of the Civil Code of 1913 provides:

"All motions for new trial, in arrest of judgment, or to set aside a judgment, shall be made within ten days after the rendition of judgment."

This provision of the statute is mandatory. It is also provided in the Civil Code of 1913, paragraph 1231:

"Upon appeal from a final judgment the court shall review all orders and rulings made by the court below, which are assigned as error, whether a motion for a new trial is made or not. If a motion for a new trial is made and denied, the court may, on appeal from the final judgment, review the action of the court below in denying the motion, though no appeal be taken from the order denying the motion for a new trial; provided, that on appeal from a final judgment, the supreme court shall not consider the sufficiency of the evidence to sustain a verdict or judgment in an action tried before a jury unless a motion for a new trial shall have been made."

In *Gibson* v. *McLane*, 17 Ariz. 61, 148 Pac. 288, we said:

"A motion for a new trial required by Civil Code of 1913, paragraph 590, to be made after rendition of judgment, being made before then, is ineffectual. The motion for new trial having been made premature, it is as though there had been none."

It is urged that the trial court committed error in permitting oral proof of the state of the indebtedness of Armer to the appellee at the time he gave his renewal note without requiring appellee to produce the original note or satisfactorily account for its nonproduction; that because of this the rule which requires the best evidence to be produced which the nature of the case demands was violated. The evidence discloses that the second note of Armer was not given in payment of the original indebtedness, but merely as a renewal for that portion of it unpaid at the time of the execution of the renewal note.

"A renewal note has the benefit of any security for the payment of the original indebtedness, and the holder may enforce it whether the renewal be for the whole or part of the original, in the absence of an agreement to the contrary." Daniel on Negotiable Instruments, (6th Ed.) Vol. 1, § 748.

It is, of course, universally recognized that the best evidence of which a thing to be proven is susceptible must be produced

or its absence satisfactorily accounted for. This parol evidence did not vary or contradict any written instrument, but merely showed the state of the account or the amount of the indebtedness of Armer to appellee when he accepted the renewal note. The existence of this indebtedness was a fact in and of itself which depended upon the state of the account between the parties. The original note would not determine this. It was incumbent upon appellee to prove that the note sued upon was pledged to secure the present indebtedness of Armer, and, in addition to this, the production of the renewal note with parol testimony as to the amount of the original indebtedness remaining due and unpaid at the time of its execution is certainly all that should reasonably be required.

Under the facts of this case, it is not considered that the rule insisted upon should obtain to exclude parol evidence as incompetent to show the state of the account between Armer and the appellee. The present state of the indebtedness, together with the pledge of the notes in suit as security for the payment of that indebtedness, is the foundation of this action. The inquiry, therefore, as to the original indebtedness of Armer was but collateral to the main issue before the court, and we see no error in admitting the parol testimony of the witnesses who had personal knowledge of the facts to prove the state of that indebtedness. See *Stein* v. *Local Board of Review,* 135 Iowa, 539, 113 N. W. 339; *Canadian Bank of Commerce* v. *John J. Sesnon Co. et al.,* 68 Wash. 434, 123 Pac. 602; *Share* v. *Coats,* 29 S. D. 603, 137 N. W. 402.

According to the testimony, the authority given by appellee to Mr. Christy was limited to passing upon the sufficiency of the collateral and on the strength of which the bank was to purchase the Lamm and Armer notes. Mr. Christy testified for the appellee that he was asked by Mr. Greer, its president, over the telephone to select certain notes as collateral to be put in escrow in the Valley Bank for certain notes that the appellee had purchased from the Realty Securities Company, and to pass upon the collateral notes as to their sufficiency.

At the time Mr. Christy received the notes in behalf of the First National Bank, he considered them A No. 1 commercial paper. At the time no defense entered his mind. The value of the name attached to the note was all. On his cross-examination the court excluded as not proper cross-examination the matter of the financial condition of the Realty Secur-

ities Company, at the time he passed upon the sufficiency of the collateral notes.   There was no error in this respect.   In the first place, it was sought to establish on cross-examination the new matter made an issue by the answer of defendants. This properly was to be brought forward in the development of their own case.   This was afterward done, and Mr. Christy fully interrogated about the matter which, on cross-examination, had been excluded as not in proper order.

It was the contention of the defendants and the effort of their cross-examination to show that the bank was not a holder of the paper in due course because Mr. Christy had knowledge of certain infirmities therein when passing upon the collateral, and which knowledge was chargeable to the bank.   But we have seen that the authority of Mr. Christy was limited to passing upon the sufficiency of the security.   "The value of the name attached to the note was all."   In addition to this, the fact that Mr. Christy knew that the Realty Securities Company did not have sufficient funds at that time to erect a building, and, conceding that his knowledge was imputable to appellee, it would not destroy the status of appellee as a holder in good faith, even though an agent of the Realty Securities Company had obtained the notes by falsely and fraudulently representing such to be the fact, if Mr. Christy did not know that any such representation had been made to the makers thereof.   As between the defendants and the Realty Securities Company, if the latter's agent had made representations to the former that such was a fact and it was false, and they believed it and relied upon it as true and were thereby induced to execute their notes on the faith of the representations that the company did have money in the bank sufficient to erect a building, the defense might prevail, but, as between the appellee and the defendants, it was not sufficient to show that the notes were obtained by the Realty Securities Company through false and fraudulent representations. It was necessary to go further and show that appellee had actual knowledge thereof, or knowledge of such facts that its action in taking the instrument amounted to bad faith.

Mr. Christy testified that he did not follow the actions of the Realty Securities Company, and did not know its financial condition at any time, other than knowledge of how much money it happened to have in its bank account; that when

he examined the notes for appellee, he did not know what, if any, representations had been made to the makers thereof.

One of the instructions is assailed because it is said to ignore the principle that notice to an agent is notice to the principal. It is impossible for a court to state in one sentence, or in one particular instruction, all the law applicable to the facts of a case. The instructions must be considered as a whole, and, when so considered, then if they fairly and accurately present the law applicable to the facts, this is all that may be required. The court did particularly instruct the jury on this principle of the law, and, in view of the limited authority given to Mr. Christy by the appellee, it was more favorable to defendants' contention than was justified by the facts.

Error is assigned on the following instruction:

"You are instructed that 'puffing' statements made by promoters or agents selling stock of the Realty Securities Company as to the value of the stock as an investment, and other kindred statements, would not constitute a defense."

It is said that this instruction is bad because it is a comment upon the evidence, and also because the court did not point out the distinction between a "puffing" statement and a false representation. It is obvious the instruction does not comment upon the evidence. It is a general statement of the law applicable to the facts. When persons are *compos mentis* and deal at arm's-length, the law does not regard mere "puffing" as to the value of stock as an investment the same as a false representation or the positive affirmation of a specific fact, but rather as a mere expression of opinion or "trade talk" which men of ordinary intelligence in their business dealings always receive *cum grano salis*. If defendants desired a charge covering the distinction here suggested, a proper instruction to that effect should have been requested. What is commonly called "puffing" or "trade talk" is always allowed, provided it is kept within reasonable limits. This instruction so confined it, and, when considered with other instructions defining false and fraudulent representations, could not have been misunderstood by the jury.

Complaint is made because the court did not give seven different forms of verdict to the jury, and a verdict thereupon rendered against each defendant separately; also because the jury did not find the amount of the recovery in each separate case. When cases are consolidated, there is in effect but one

suit, and a single verdict and judgment comprehending and settling all the issues involved is sufficient. The appellants themselves caused the consolidation to be made, and they are in no position to take this exception, and now ask that the verdict and judgment be set aside because technically the cases are not such as under the law should have been consolidated. But beyond this the form of the verdict comprehended the style and number of each particular case so consolidated, and to hold that the verdict rendered should have been upon seven separate pieces of paper would be regarding mere form rather than substance.

"No special form of verdict is required, and where there has been substantial compliance with the law in rendering the verdict, the judgment shall not be arrested or reversed for mere want of form therein." Civil Code 1913, par. 546.

The objection that the jury did not find the amount of recovery in each case is alike untenable. The undisputed testimony shows that the indebtedness of Armer, which is the basis of this action, was greater than the amount of any of the notes in suit. It was stipulated that the amount due on each note should be the amount as shown by the face of the respective notes in suit. There was nothing, therefore, to be done, except make a mere arithmetical calculation of the amount, and it is not contended that any error occurred in the calculation as made. That the calculation being made by the court, under the circumstances, instead of the jury, calls for a reversal of the judgment is again inviting our attention to shadow, not substance. While the record does not call for a critical analysis of the evidence, nevertheless, the evidence has been carefully reviewed in its bearing upon other assignments of error, and it is convincing that nothing in the record would warrant a finding that the action of appellee in taking these notes amounted to bad faith. It may be conceded that the notes were obtained from appellants by false and fraudulent representations on the part of the Realty Securities Company, but this is not enough for them to prevail.

The method by which these appellants were inveigled into this investment, of which they now wish to be relieved, is an interesting study of human nature. Michael Angelo with paint and brush could not have pictured a thing more beautiful than the building drawn in words by the agents of the Realty Securities Company. The prospective profits to be derived

from the tenants who were to inhabit this building were most alluring. From the cold record that we have, without the gesture and tone of voice that must have been potent to move the warm impulses of the heart, I can see in my mind's eye that majestical building rising to its due proportions of architectural perfection, furnished with every modern equipment and appliance that would appeal to the tastes of tenants the most fastidious. It was a thing altogether lovely. The appellants were even told that the dirt to be removed for its foundation was not then flying, but that the dirt would soon be flying, that the company had ample resources to make the dirt fly, and erect the building too. They were told that the execution of the notes was a mere formality. That before the notes became due immense revenues would be coming in from the building with which not only to take up the notes, but leave a large surplus profit to be shared in by the makers. Most any moth would have singed its wings in the bewilderment of such a light. In the enthusiasm of this study, the writer of this opinion almost feels a momentary regret that the opportunity to give such a note was not presented to him. Man, thou shalt earn thy bread by the sweat of thy brow. But when will men learn this lesson? It would prove but a vain and useless effort of the law to attempt the suppression of gullibility. The term "gullibility" is not used invidiously nor in the least disparagement to these appellants, but merely as a general observation of one of the fundamental traits in human nature. Since the father fell, every son of Adam is subject to the weakness in greater or lesser degree. The obvious remedy for this infirmity is the lesson of one's own experience which should in time, to those not wholly insensible to cause and effect, nor blind to an everyday experience in business matters, inculcate a wholesome and practical circumspection upon those occasions that present Mr. Wallingford as the orator of the day. But so long as an irresistible impulse exists among mankind to rub the Aladdin's Lamp and thereby obtain the rich stores of the world without other effort than some mysterious agency, just so long will Mr. Wallingford dine out of gold plate and ride in his coach and four. Had this been learned, this appeal had not been here.

All men *compos mentis* and not suffering under some disability of the law are free to engage in business and invest their money at will. The freedom to contract is one of their

most cherished and substantial rights, and it is only when fraud as defined in the law has been practiced upon them that the courts may interfere to set aside their obligations. Representative men of financial worth and standing must realize that in putting forth their unmatured, negotiable paper it is an invitation, sanctioned by the law, that all men may deal therewith upon the face value of it. In the market places men who deal in such paper are not, at their peril, compelled to make an original and independent investigation of the circumstances surrounding the issue of every such instrument, or of the relations existing between the maker and payee thereof. It is enough if they give value and take the paper in good faith. Though the fraudulent payee may be enabled to realize upon a sale made to an innocent purchaser, still it is but a just rule of the law that, as between the maker and the holder in due course, any loss to be suffered must fall upon the maker as the cause of it. This burden may not be shifted unless the person to whom the instrument is negotiated had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amount to bad faith. Paragraphs 4201, 4202, Civil Code 1913.

The policy of the law is to let unmatured negotiable paper flow freely in trade, and any impediments placed upon its movement that are not dictated by a natural sense of justice would result in obstructing the arteries of commerce, and distract the business credit of commercial life, which is so largely dependent upon this character of credit, as a medium of exchange, to sustain it.

There is no reversible error. Affirmed.

ROSS and CUNNINGHAM, JJ., concur.

As to what circumstances are sufficient to put a purchaser of negotiable paper on inquiry, see notes in 29 L. R. A. (N. S.) 351; 44 L. R. A. (N. S.) 395.