[Civil No. 3210. Filed February 13, 1933.]

[19 Pac. (2d) 82.]

PHOENIX TITLE & TRUST COMPANY, a Corporation, Appellant, v. S. T. HORWATH and JOSEPHINE HORWATH, His Wife, Appellees.

418

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Appellant.

Mr. L. J. Cox, Mr. L. C. McNabb and Mr. O. B. De Camp, for Appellees.

LOCKWOOD, J.—S. T. Horwath and Josephine Horwath, his wife, hereinafter called plaintiffs, brought suit against the Phoenix Title & Trust Company, a corporation, hereinafter called defendant, to recover damages for the alleged negligence of defendant in its handling of a certain quitclaim deed deposited by plaintiffs with it as an escrow. The case was tried to a jury, which returned a verdict in favor of plaintiffs in the sum of $5,000, and after the usual motion for new trial was made and overruled the matter was brought before us for review.

The first question presented for our determination is the contention of plaintiffs that we are precluded from considering the evidence in the case for the reason that the motion for new trial was prematurely made. Section 3660, Rev. Code 1928; *Ellis* v. *First Nat. Bank,* 19 Ariz. 464, 172 Pac. 281; *Hammels* v. *Kreig,* 29 Ariz. 218, 240 Pac. 348.

It appears from the minutes of the trial court on November 4th, 1931, that after the verdict of the jury was received the following entry was made: "Now Plaintiff moves for Judgment on the Verdict. Whereupon it is Ordered granting Motion for Judgment on submission, signing and filing of the proper form." This entry on its face is not a rendition of judgment, but merely the preliminary order referred to in *Moulton* v. *Smith,* 23 Ariz. 320, 203 Pac. 562, and no motion for new trial could be filed until formal rendition of judgment in the manner stated in *Kinsley* v. *New Vulture Mining Company,* 11 Ariz. 66, 90 Pac. 438, 110 Pac. 1135.

Thereafter on March 26th of the ensuing year the defendant filed a motion for an order correcting such minute entry in accordance with what it claimed to be

the true facts, which was supported by affidavit, and upon such motion the following minute entry was made: "It is ordered that there may be an order correcting the minute entry of Nov. 4, 1931, to read: 'Motion granted and it is Ordered for Judgment in accordance with the verdict.' " It is the contention of plaintiffs that the notice of appeal and *supersedeas* bond thereon having been given before March 26th, the court had lost jurisdiction to correct its minute entry as above set forth. *Sam* v. *State,* 33 Ariz. 421, 265 Pac. 622; *Navajo R. Co.* v. *County Bank,* 31 Ariz. 128, 250 Pac. 885.

It is defendant's position, on the other hand: First, that the court had not lost jurisdiction to make a correction of this kind, and, second, that plaintiffs having moved for judgment on November 4th, and having thereafter filed their cost bill and allowed the motion for new trial to be denied without suggesting that it was prematurely taken, are estopped from making such contention on this appeal. We are of the opinion that the position of defendant is correct on both grounds. While we have held several times that the trial court loses jurisdiction of a case for ordinary purposes after an appeal is taken, we have also held in the same cases it still has the jurisdiction to make such orders as are in the furtherance of the appeal, and we think correcting its record in order to show the true state of facts is certainly within the exception. *Gotthelf* v. *Fickett,* 37 Ariz. 413, 294 Pac. 837; *Sam* v. *State, supra; Navajo Realty Co.* v. *County Bank, supra.* We have further held that where counsel for an appellee participate in proceedings on the theory that the motion for new trial is timely they will be estopped from denying it. *Maricopa County Municipal Water Conservation Dist.* v. *Roosevelt Irr. Dist.,* 39 Ariz. 357, 6 Pac. (2d) 898.

We think the evidence is before us for such consideration as is proper.

We proceed next to examine the various alleged errors presented by defendant. In so doing a brief statement of the undisputed facts of the case is advisable. On April 1st, 1930, Library Court Apartment Company, a corporation, hereinafter called the company, as seller, and plaintiffs, as buyers, entered into an agreement for the purchase and sale of lots 7, 8, 9 and 10 in block 24, Neahr's addition to the city of Phoenix. The consideration agreed to be paid was $45,000, $5,000 being represented by a certain piece of real estate deeded by the plaintiffs to the company and mutually estimated by the parties as worth that sum, $15,000 by the assumption of a certain mortgage then on the premises, and the balance in certain monthly and quarterly payments. To insure the payment of the first $10,000 of the purchase price not covered by the transfer of the real estate or the assumption of the mortgage, plaintiffs executed in favor of the company a mortgage on their equity in certain property in the North Kenilworth addition to Phoenix. The agreement is very full in detail, but the dispute arises only over the meaning of certain portions thereof which we quote as follows:

"It is further agreed that time is the essence of this agreement and in the event of default in making any of the payments herein provided to be made when same become due and payable, or in the event of failure of the Buyer to comply with any of the terms hereof, then the Seller may thereupon, at the option of the Seller, enforce the rights of the Seller hereunder, either by the forfeiture of all the rights of the Buyer under this agreement, and all the interest of the Buyer in the lands described herein, and the appurtenances, subject to the provisions hereinafter contained, or by any action in equity or at law for specific performance with damages, or for the recovery of the purchase price with interest. . . .

"In case the Seller elects to enforce the forfeiture provisions herein, the Seller may declare said forfeiture by delivering to the Phoenix Title and Trust Company a written declaration of forfeiture in duplicate, addressed to the Buyer and to the Phoenix Title and Trust Company as escrow-holder. The Phoenix Title and Trust Company shall thereupon serve the said declaration of forfeiture upon the Buyer personally or by enclosing one of the copies of said declaration of forfeiture in an envelope directed to the Buyer at the last Post Office address which the Buyer shall have caused to be filed with the Phoenix Title and Trust Company and depositing said envelope, with proper postage affixed thereto, in the United States mail, or if no such address be filed, by addressing the said envelope to the Buyer at Phoenix, Arizona; and should the Buyer fail to eliminate all delinquencies and be free from any default, according to the terms of this agreement, before the expiration of ten days from the date of the depositing of said notice in the United States Mail as provided above, all rights, estates, and interest herein created or then existing in favor of the Buyer or any person claiming under or through the Buyer, shall utterly cease, terminate and become null and void, and the right of possession, and all equitable and legal interest and estates in the premises herein described, with all improvements and all other appurtenances, together with all sums of money theretofore paid by the Buyer hereunder, shall revert to, revest in, and become the sole property of the Seller in fee, and the Buyer shall have no right, either at law or in equity, to reclaim or recover any compensation for moneys paid, services performed, or improvements placed upon the said land, and the money paid, and the improvements erected shall be forfeited to, be retained by, and become the sole property of the Seller as the liquidated damages for such default, and not as a penalty, and also as consideration for the execution of this agreement; Provided, However, that no forfeiture hereunder shall be enforced until and after the expiration, after such default, of the periods hereinafter provided for and it shall be lawful so to do in the manner herein pro-

vided, when such default shall have continued for said periods, to-wit:

"In cases where the Buyer has paid less than 20% of the purchase price—30 days.

"In cases where the Buyer has paid 20% or more, but less than 30% of the purchase price—60 days.

"In cases where the Buyer has paid 30% or more, but less than 50% of the purchase price—120 days.

"In cases where the Buyer has paid 50% or more, of the purchase price—9 months.

"After the expiration of ten days from the date of service or depositing in the United States mail of declaration of forfeiture as herein provided, the Phoenix Title and Trust Company may deliver the documents held in escrow to the parties entitled thereto."

This agreement was deposited by the plaintiffs and the company with defendant herein as an escrowholder for hire. It was accompanied by a warranty deed from the company to plaintiff, which was to be delivered when all the payments provided for by the agreement had been made. Since the agreement of sale was to be recorded and plaintiffs were to take immediate possession of the premises thereunder, the latter executed a quitclaim deed to the premises in favor of the company and placed it also with defendant in escrow under the following instructions:

" . . . With reference to Agreement for Sale executed under above Escrow, by undersigned as Buyer, you are directed to record said Agreement and are herewith handed Quit Claim Deed from the undersigned in favor of Library Court Apartment Company, an Ariz. Corp., covering the property set forth in said Agreement.

"You are instructed to hold said Quit Claim Deed in Escrow so long as the undersigned shall comply with all of the terms and conditions specified in said Agreement for Sale, but should the undersigned fail so to do, you are authorized, upon demand of the Seller to said Agreement for Sale, or its assigns, to make delivery of said Quit Claim Deed or to file same for record in the local Recorder's Office. . . . "

The payment due July 1st, 1930, was duly made, but the one due on October 1st was not, nor was it ever tendered to the company. On the 21st of October the company delivered to defendant the following written notice:

"Phoenix, Arizona, October 21, 1930.
"To S. T. Horwath and Josephine Horwath, His Wife, and
"Phoenix Title and Trust Company:
"Because of the failure of S. T. Horwath and Josephine Horwath, his wife, their heirs, executors, administrators, or assigns, to make the payments as provided to be made under the terms of the agreement for sale dated April 1, 1930, executed by Library Court Apartment Company, an Arizona corporation, as Seller, and S. T. Horwath and Josephine Horwath, his wife, as Buyers, for the sale of Lots 7, 8, 9, and 10, Block 24, Nehr's Addition, an Addition to the City of Phoenix, the undersigned, as Secretary-Treasurer of the said Library Court Apartment Company, an Arizona corporation, elects to enforce the forfeiture provisions of said agreement in accordance with the terms thereof; and hereby demands delivery to him by the Phoenix Title and Trust Company, of the quit-claim deed executed by the said S. T. Horwath and Josephine Horwath, his wife, in favor of the Library Court Apartment Company, a corporation of Arizona, and held in escrow by the Phoenix Title and Trust Company under its Escrow 20124; and further demands possession of the above described premises from the said S. T. Horwath and Josephine Horwath, his wife, their heirs, executors, administrators or assigns.
"LIBRARY COURT APARTMENT COMPANY
"By JOE ROGERS,
"Secretary-Treasurer."

It also notified the tenants of the premises to pay no more rent to plaintiffs. On the same day defendant placed a copy of said notice in an envelope addressed to the plaintiffs at Phoenix, Arizona, no other

address having been given defendant, and also inclosed therein the following letter:

"S. T. Horwath and Josephine Horwath,
      "1757 W. Madison Street,
            "Phoenix, Arizona.
"Dear Sir and Madam:

"Because of your failure to make the payments provided to be made by you under your contract to purchase Lots 7, 8, 9 and 10, Block 24 Neahr's Addition, from the Library Court Apartment Company, Mr. Joe Rogers, as Secretary-Treasurer of the Library Court Apartment Company, has elected to declare the contract forfeited and we enclose herewith a copy of the declaration of forfeiture which Mr. Rogers has served upon us.

"For your information, unless all delinquent payments on this contract are eliminated on or before the expiration of ten days from today, we will be compelled to deliver to the Library Court Apartment Company the quit-claim deed executed by yourself and which we hold in escrow.

                "Very truly yours,
"PHOENIX TITLE AND TRUST COMPANY
                By J. J. BARKLEY,
                "Escrow Officer."

The envelope was registered and properly mailed on that date, and the return receipt showed it was received by plaintiffs on the 24th of October. On the 31st of October plaintiffs delivered the following letter to defendant:

                "October 31, 1930.
"Phoenix Title & Trust Company,
      "Phoenix, Arizona
"Gentlemen:

"This is to notify you not to deliver any papers in connection with your escrow between the undersigned, S. T. Horwath and Mrs. Josephine Horwath, his wife, parties of the second part, and Library Court Apartment Company, party of the first part, under contract bearing date of April 1, 1930, until the provisions contained in the last paragraph on the bottom

of this contract have been complied with in reference to enforcing a forfeiture.

"The undersigned are advised that the seller can not elect to enforce the forfeiture provided in said contract until after the 31st day of October, 1930, and that any attempted election is void and if you deliver any escrow papers to the seller as indicated by your letter of October 21, 1930, the undersigned will hold you responsible for same.

"You are further notified that the undersigned did not receive your letter dated October 21, 1930, until the 24th day of October, 1930.

"You are further notified that certain collateral has been placed with the seller under this contract and that no forfeiture can be had until this collateral is returned to the undersigned or delivered to you for the purpose of being unconditionally returned.

"You are further notified that Joe Rodgers, as Secretary and Treasurer of the Library Court Apartment Company, has no authority as such officer or by virtue of such office, to declare a forfeiture on a real estate contract.

"Dated the 31st day of October, 1930.
                    "S. T. HORWATH
                    "MRS. JOSEPHINE HORWATH
                        "By L. J. COX,
                                "Their Attorney."

There was some discussion thereafter between counsel, defendant contending that it was its duty to deliver the quitclaim deed held by it in escrow within ten days after the mailing of the notice by it, while plaintiffs insisted that the notice was premature in that it could not be given until they were in default for thirty days, and that forfeiture could not be declared until after the expiration of the thirty-day period referred to in the agreement of sale and above quoted, nor enforced till notice of the declaration had been subsequently given and ten further days had elapsed, which would be at the earliest on the eleventh day of November. The quitclaim deed was actually delivered by defendant to plaintiff on

the third day of November. Plaintiffs had been placed in possession of the property shortly after the execution of the agreement and were in such possession on the date defendant delivered the quitclaim deed to the company. After the delivery of the deed the company notified plaintiffs to move out, but took no legal steps to eject them, and plaintiffs did surrender possession of the premises on the eighth day of November without any legal process compelling them so to do. Defendant had nothing to do with the matter except to deliver the notice and deed as above.

On the thirteenth day of November plaintiffs filed an action against the company, defendant herein not being made a party thereto. This action was not one to recover possession of the property itself, but to recover from the company damages to the value of plaintiffs' interest therein. In the meanwhile the owner of the North Kenilworth property in which plaintiffs held an equity which they had mortgaged to defendant, as above stated, requested defendant herein to serve notice on plaintiffs of a forfeiture of their equity in such North Kenilworth property. The notice was not sent out by defendant until November 30th, and some five days before that the mortgage given by plaintiffs on their equity in that property was formally released by the company. It is admitted that the suit against the company above referred to is still pending. There are some other facts which are in dispute, but if necessary we will refer to them from time to time as the occasion arises.

There are twelve assignments of error, but we will consider rather the legal propositions raised thereby. The first question is as to the time when, under the various agreements and escrow instructions above set forth, it was the duty of defendant to deliver the quitclaim deed to the company. It is the position of

plaintiffs that no notice of the declaration of a forfeiture could be given until the full thirty days had elapsed after a payment was due and that the forfeiture could not be enforced nor the deed redelivered until an additional ten days after the notice was given. It is the contention of defendant, on the other hand, that the ten-day notice which the agreement provided should be given by it was not an integral part of the enforcement of a forfeiture but merely an advice that a forfeiture would be enforced at the end of thirty days from the time of default, and that such notice might be given by it at any time after the default. In other words, plaintiff urges that the periods of thirty and ten days above referred to must run successively, while defendant insists they might be either successive or concurrent.

It is, of course, the general rule that forfeitures are not favored by law, and if an agreement providing for a forfeiture is capable of two constructions, that which is against the forfeiture should be followed. *Christy* v. *Arnold,* 4 Ariz. 263, 36 Pac. 918; *Wahlstrom* v. *Christy,* 20 Ariz. 331, 180 Pac. 528.

We have not been cited to any cases the facts of which are precisely the same as those of the present one, nor is this strange, for contracts of this nature differ infinitely in their language. It is apparent, however, both from the contract and the statute governing transactions of this nature, that plaintiffs had at least thirty days after default to make their payments, regardless of any desire of the company to enforce a forfeiture at an earlier date. It is also apparent that after the right to enforce a forfeiture had ripened the company was not obliged to exercise that right, but might either waive the default by accepting the payment of the amount due if it were tendered, bring an action for specific performance and damages, or enforce the forfeiture. Until the

company acted plaintiffs could not know which course it meant to pursue. It was but reasonable, therefore, that after determining on its course it should notify plaintiff of its intention, and the contract provides for such a notice being given in case of an election to enforce the forfeiture. Taking these matters into consideration and remembering the rule that forfeitures are not favored by the law, we think the reasonable construction of the entire contract is that notice of the election of a forfeiture could not be given until the company had the right to enforce it against the will of plaintiffs, which would be at the end of thirty days after a default, and such notice by the terms of the contract gave ten days to plaintiffs to remedy their default before their rights under the contract ceased. Such being the case, defendant had no right to deliver the quitclaim deed to the company until at least forty days after the 1st of October, and its action in that behalf was premature, and plaintiffs would have a right of action for whatever damages were caused them thereby.

What, if anything, were the damages? If plaintiffs made no effort to remedy their default, but wholly failed or refused to make the payments in accordance with the contract, we are of the opinion there would be none. The buyer in a conditional contract of sale who desires to resist a forfeiture declared by the seller must show that he was ready, able and willing to perform his part of the contract. It is most strenuously urged by defendant, and the record seems to bear it out, that no tender of payment of any amount was ever made by plaintiffs after the first day of October. It appears affirmatively that after the delivery of the quitclaim deed, which is the only act on which plaintiffs predicate any liability of defendant, the former were still in possession of the property. If such delivery was wrongful it

would in no manner have affected their rights against the company. *Houston* v. *Forman et al.,* 92 Fla. 1, 109 So. 297, 48 A. L. R. 401, and notes. At most, it would have constituted a cloud on the title of plaintiffs which could have been removed by appropriate action on their part. They, however, did not attempt to enforce specific performance or resist an ejectment, but, on the contrary, surrendered possession of the premises on the mere request of the company and within a few days thereafter brought suit against it to recover damages for a breach of the contract. This was as a matter of law an election by them to ratify the delivery of the deed and attempt to recover the value of their interest in the property, instead of repudiating such delivery and attempting to enforce the contract. They could do either one, but not both. *Sunderlin* v. *Warner,* 42 Idaho 479, 246 Pac. 1; *Smith* v. *Griffith,* 105 Kan. 357, 184 Pac. 725.

Since the only possible effect of the delivery of the quitclaim deed was to show a legal title in the seller, we fail to see how plaintiffs could be injured by the act of defendant in doing the very thing which plaintiffs afterwards ratified.

But, say plaintiffs, by reason of the act of defendant they were prevented from securing the funds wherewith to meet their payments, and therefore there was nothing for them to do but to surrender possession of the premises and sue for damages. This claim is obviously based upon the testimony of plaintiffs that they had taken up the matter of raising the money required with two parties who were able to furnish it and had promised to do so. We have examined the reporter's transcript on this point carefully and find that the two parties referred to were placed on the stand and testified in substance that while they did have general discussions in re-

gard to advancing money to plaintiffs to take care of some contracts, they were very hazy in regard to the details and as to whether or not the money would ever have been advanced, one witness, indeed, stating that he would not have loaned anything on a second mortgage. But taking plaintiffs' testimony as establishing the fact that they had a definite arrangement to secure the money, there is not a scintilla of evidence in the record that those parties ever refused to make the loan because of the premature delivery of the quitclaim deed. It must be constantly borne in mind that the only thing which it is alleged defendant should not have done, and the only thing for whose consequences under any theory of the case it was responsible, was the delivery of the deed. So far as the premature forfeiture, the notice to the tenants of the premises in question not to pay rent, and the removal of plaintiffs from the premises, assuming even that they were forcibly ejected, are concerned, they were the act of the company, and of it alone, and defendant is in no way responsible therefor. Unless, therefore, it appears affirmatively in the record that the parties who had agreed to advance the money refused to do so because of the delivery of the deed, defendant is not responsible for such refusal or any consequences which might flow therefrom.

So far as the alleged damage done by the failure to release the mortgage on the North Kenilworth property is concerned, it appears in the record that this mortgage was released on November 25th, and the notice of forfeiture of plaintiffs' equity in it was not delivered to them until November 30th, five days later. Certainly if the mortgage thereon given by the plaintiffs to the company was the cause of their inability to refinance the property, that cause was removed long before the attempt to forfeit their.

432

equity in it. We think that on their own theory of the case, plaintiffs correctly brought their action against the proper party when they sued the company. If they had and have any rights against anyone under the undisputed facts in the case, it is against the company and not against defendant. We need not discuss the matter further.

For the foregoing reasons the judgment of the superior court of Maricopa county is reversed and the case remanded, with instructions to render judgment for defendant.

ROSS, C. J., and McALISTER, J., concur.