(157 App. Div. 844.)

### MacFARLANE v. MOSIER & SUMMERS et al.

(Supreme Court, Appellate Division, Fourth Department.    July 8, 1913.)

1. MUNICIPAL CORPORATIONS (§ 354*)—CONTRACTS—CANCELLATION—VIOLATION OF LABOR LAW.

A contract for the construction of a public building by a city does not exist until a written contract has been executed as required by the city charter, and a violation of Labor Law (Consol. Laws 1909, c. 31) § 3, as amended by Laws 1909, c. 292, in working men on municipal work more than eight hours a day, after the contractor's bid had been accepted, but before the contract was executed, is not ground for the cancellation of the contract under section 4, as a violation in the manner of performance of a contract.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 886, 887; Dec. Dig. § 354.*]

2. MUNICIPAL CORPORATIONS (§ 335*)—CONTRACTS—REVOCATION AFTER ACCEPTANCE OF BID.

After a contractor's bid for public work has been accepted, and the council has authorized the commissioner of public works to enter into the contract, neither the council nor the commissioner can arbitrarily refuse to accept a satisfactory bond and execute a proper written contract.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 860, 861, 863; Dec. Dig. § 335.*]

3. MUNICIPAL CORPORATIONS (§ 354*)—CONTRACTS—CANCELLATION—VIOLATION OF LABOR LAW.

A contract for municipal work does not relate back to the date of the acceptance of the bid, so as to render a violation of Labor Law (Consol. Laws 1909, c. 31) § 3, as amended by Laws 1909, c. 292, in working men on municipal work more than eight hours a day before the execution of the contract, a ground for the cancellation of the contract under section 4, as a violation in the manner of performance of a contract.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 886, 887; Dec. Dig. § 354.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. MUNICIPAL CORPORATIONS (§ 354*)—CONTRACTS—CANCELLATION—VIOLATION OF LABOR LAW.

A violation of Labor Law (Consol. Laws 1909, c. 31) § 3, as amended by Laws 1909, c. 292, providing that men on municipal work shall not be required or permitted to work more than eight hours a day, is not ground for the cancellation of the contract under section 4, providing for the cancellation of contracts which in the manner of their performance violate the act, where the violation was by a subcontractor, and without the permission or knowledge, actual or constructive, of the contractor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 886, 887; Dec. Dig. § 354.*]

Appeal from Special Term, Erie County.

Action by William B. MacFarlane against Mosier & Summers and others. From a judgment dismissing the complaint (79 Misc. Rep. 460, 141 N. Y. Supp. 143), plaintiff appeals. Affirmed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Irving W. Cole, of Buffalo (Hamilton Ward, of Buffalo, of counsel), for appellant.

John W. Ryan, of Buffalo, for respondents Mosier & Summers.

Clark H. Hammond, Corp. Counsel, of Buffalo (George E. Pierce, of counsel), for other respondents.

ROBSON, J. This action is brought pursuant to the provisions of section 3 of the Labor Law (Consol. Laws, c. 31 [Laws of 1909, c. 36], as amended by Laws of 1909, c. 292) by a citizen of the city of Buffalo to obtain the cancellation of a contract made by the defendants Mosier & Summers with the defendant city of Buffalo for the erection by the former of the Technical High School, and as further relief that the defendant Justice, as the comptroller of the city of Buffalo, be enjoined and restrained from paying to the defendants Mosier & Summers any moneys to apply upon said contract, and that the moneys already paid to Mosier & Summers upon said contract be refunded to the city by Mosier & Summers and the officers of defendant city who are defendants in this action. The ground upon which plaintiff seeks to base his cause of action is an alleged violation of section 3 of the statute in the "manner of performance" of the contract.

[1] The complaint being, as has been said, based upon an alleged violation of section 3 of the Labor Law in the manner of performance of the contract which Mosier & Summers had with the city of Buffalo for the erection of this public building, it is important to determine whether at the time of the violations alleged there was in fact a contract between these parties. These violations all occurred between the 17th of April and the 1st day of May, 1910. The formal written contract was not in fact signed till May 22d following. Plaintiff, however, contends that the contract was in fact made as early as April 4th preceding.

There is no dispute that proper proceedings were had by the duly authorized city officials by which plans and specifications for the proposed building were duly adopted, a notice duly published calling for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

proposals or bids for the work of construction, that bids were received, and that it was duly ascertained by the commissioner of public works, upon whom rested the power and responsibility of the determination, that Mosier & Summers' bid was that of the lowest responsible bidder. This bid was accompanied, as required by the terms of the advertisement, with a bond conditioned in effect that, if the bid was accepted, the bidder would make the contract with the city according to the terms proposed in the advertisement for bids. But the legal scheme governing the letting of contracts of the class to which the contract in question belongs provided for a report by the commissioner of his determination to the common council, without whose consent the contract could not be made. This was done in this instance, and the commissioner of public works was duly authorized about April 4th to enter into the contract with Mosier & Summers. Plaintiff claims that at this point a complete contract was made between the city and the contractors. But a further charter provision required that all contracts of this class must be in writing, and that a bond, to be duly approved by the mayor of the city, must also be furnished by the contractor, providing in effect for the faithful performance of the contract. The advertisement for bids and the bid itself contemplated and provided for this exact procedure.

[2] Doubtless the common council, after duly authorizing its superintendent of public works to enter into this written contract, could not, nor could that official of his own motion, arbitrarily refuse to complete the business of making the contract by accepting a satisfactory bond of the contractor and signing a written contract conforming to the advertisement, the bid, and its acceptance. Sufficient authority for this proposition may, I think, be found in the cases cited and reviewed in the prevailing opinion in Molloy v. City of New Rochelle, 198 N. Y. 402, but a contract in form to bind the city as a contract between the parties for the actual construction of the building had not then been completed. The bidder was still required to furnish a satisfactory bond, which was thereafter to be formally approved, and the written contract was to be prepared and signed, for no other contract than a written contract in such case could be a contract between the parties as the charter of defendant city provides. I think, therefore, the trial court was right in holding that at the time of the violations complained of defendants did not, in the manner of performance of a contract with the city, violate the provisions of section 3, for at the time of the violations alleged the contract had not yet come into existence. Hepburn v. City of Philadelphia, 149 Pa. 335, 24 Atl. 279; Water Com'rs of Jersey City v. Brown, 32 N. J. Law, 504; Edge-Moor Bridge Works v. County of Bristol, 170 Mass. 528, 49 N. E. 918; Dillon's Municipal Corporation (5th Ed.) § 810.

The violations alleged occurred while a subcontractor named Brown was engaged in excavating upon the site of the building. The particular violations alleged were that this subcontractor permitted or required laborers engaged in the performance of that work to work more than eight hours a day. This excavation was a part of the work included in the specifications, and also in the written contract there-

after made. Brown had agreed with Mosier & Summers to do this work, and began it soon after it was apparent that Mosier & Summers were to have the contract. Mosier & Summers paid him for this work, and the work was thereafter included with that for which they received pay on estimates of work performed by them under their contract with the city.

[3] Appellant claims that, even though it be held there existed no actual contract between the city and the contractor until the written contract was signed, yet when it was signed it related back to the time the commissioner of public works was authorized to enter into it for the city, and the statute having been violated in the performance of a part of the work contemplated by the contract in the interim between the authorization and the making of the contract, the contract itself at once became void because of the previous violations. It does not seem that can be held to result from these facts. It is conceded that after the written contract was in fact made no violations of the statute have been shown. The utmost that could justly be claimed as a result of the previous violations would be that the persons who "required or permitted" them could not recover for the work in doing which the violations occurred; the work having been done in anticipation of, and not under, the contract. But this is not the principal purpose of the present action. It attacks the validity of the whole contract.

No intimation is made that the execution of the written contract was unduly delayed for the purpose of permitting any part of the work contemplated to be done without the statutory restrictions as to the manner of performance. It is doubtless true that, if there were a basis for a suggestion that the execution of the contract was in fact delayed for the purpose, even incidentally, of avoiding the statutory prohibitions, it would be held, and properly enough, that the contractors had in fact violated the statute, and no contract, under those circumstances, should have been thereafter made with them, and, if made, it would have been void. But the good faith of defendants is not attacked.

[4] I think, also, that the trial court held properly that, even conceding that the work being done by Brown, the subcontractor, at the time of the violations alleged, was done under the contract between the city and the contractors, the evidence does not show that any of these violations were required, or permitted, by the contractors, or even that they occurred with their knowledge or consent. It would seem to be a manifest injustice to hold that violations of the statute for which the contractors were not responsible, as having themselves required or permitted them, or as having with actual knowledge, or under such circumstances as would properly charge them with constructive knowledge that violations of the statute were either required or permitted by others, who were engaged on the work, could properly be attributed to the contractors for the purpose of enforcing the drastic penalty of a forfeiture of the contract. The opinion of the trial court on this branch of the case leaves nothing of importance to be said.

The judgment should be affirmed, with costs. All concur.