[Civil No. 2817. Filed January 20, 1930.]

[284 Pac. 353.]

JOHN L. ALDOUS, Appellant, v. INTERMOUNTAIN BUILDING & LOAN ASSOCIATION OF ARIZONA, Appellee.

Messrs. Favour & Baker, for Appellant.

Messrs. Norris, Flynn & Patterson, for Appellee.

LOCKWOOD, C. J.—John L. Aldous, hereinafter called plaintiff, brought suit against Intermountain Building & Loan Association of Arizona, a corporation, hereinafter called defendant, in the superior court of Yavapai county. The matter was heard before the court sitting without a jury, and judgment was rendered for defendant; whereupon plaintiff appealed from the judgment and from the failure of the court to make findings of fact and conclusions of law, after they had been requested.

Plaintiff's action was based on the provisions of two contracts: The first, between himself and defendant; and the second, between one David Odden and defendant, Odden having assigned his rights in his contract to plaintiff. The complaint alleged that Odden and Aldous each had on deposit with defendant certain sums of money representing payments which they had made to it; that these deposits were made under an agreement that, in the event of the permanent disability of the depositors, they might receive back their deposits in full with six per cent interest; that each of them was permanently disabled, and had made demand for return of the deposits, but defendant had failed and refused to pay them.

Defendant answered, admitting the receipt of the various sums alleged in the complaint, and that it had entered into contracts with Aldous and Odden, which contracts, it alleged, among other things, contained the following clause:

"In the event of death or the permanent total disability of the legal owner of this certificate and provided the installment payments have each been made promptly as due, we will pay to the legal representative on demand within thirty days after receipt by us of satisfactory proofs of death, or permanent total disability, all moneys paid on this certificate,

less membership fee, plus interest at the rate of five per cent per annum.''

and it then alleged, as against the claim of Aldous, individually:

"Defendant denies that the plaintiff is totally and permanently disabled. . . . '' And further: "Defendant further alleges that the plaintiff has failed to furnish to the defendant satisfactory proof, or any proof at all, of his permanent total disability.''

In respect to the claim under Odden's contract, defendant alleged as follows:

" . . . This defendant denies that the said David Odden was permanently disabled during the month of December, 1926, or at any time. . . . ''

The case was tried on the issues raised by the complaint and answer on April 19th, 1928, and taken under advisement until June 30th. On that date, the record shows judgment was rendered in favor of defendant and against plaintiff on both causes of action—the court, at the time of entering judgment, making certain oral statements concerning the grounds of its decision, which were taken down and transcribed by the clerk. On July 3d plaintiff filed a written request for findings of fact and conclusions of law, but none were ever made in compliance with such request.

There are a number of assignments of error, but on examining the record we think it best first to discuss the case on the basis of the fundamental principles of law applicable thereto, and afterwards, if necessary, to take up the specific assignments of error. The first question we consider is the construction of the written contracts on which the suit was based. It is the contention of plaintiff that under such contracts, any time he and Odden were "permanently disabled," they could recover the full amount paid defendant, plus six per cent interest. On the other

hand, defendant insists that not until their deaths could such sums be recovered, or, if they are re-coverable upon disability, such disability must be both permanent and total. The original contracts were introduced in evidence, and it appears the provision in regard to payment on disability reads as follows:

"In the event of death or the permanent disability of the legal owner of this certificate and provided the installment payments have each been made promptly as due, we will pay to the legal representative on demand within thirty days after receipt by us of satisfactory proofs of death, all monies paid on this certificate plus interest at the rate of six per cent. per annum."

The words in such clause, "or the permanent disability," were stamped with red ink, evidently being inserted after the printed form of contract had been prepared. No other portion of the contract refers to payment upon disability. It is clear that this provision of the contract, before the addition of the words "or the permanent disability," gave to the personal representatives of plaintiff—after the death of the latter—the privilege of collecting the entire amount paid in, plus six per cent interest. If we adopt the construction placed by defendant upon the clause as amended, the words added are mere surplusage; for their addition would in no way change the legal effect of the contract from what it was without them. It is a cardinal rule of the construction of contracts that some effect is to be given, if possible, to every part thereof. And a contract is to be construed most strongly against the person who prepared it. The only possible way in which any effect can be given to the added phrase is on the theory of plaintiff, to wit, that his representatives could recover the amount paid, in case of his death; and he could recover, himself, in case of permanent disability; and such, we are satisfied, is the legal interpretation of the con-

tract. It will be noted the clause discussed refers to "permanent disability," instead of "permanent and total disability" as claimed by defendant. If, therefore, the pleadings and the evidence show "permanent disability" of plaintiff and Odden, and if they made proper demand for a return of the money, plaintiff was entitled to recover on both causes of action.

What is the meaning of the phrase "permanent disability," as contained in the contract? The question is not without difficulty. The word "permanent" is defined by the lexicographers as: "Continuing in the same state; remaining unaltered or unremoved; abiding; durable." International Dictionary, 1925 edition. It is the antithesis of the word "temporary." It is, however, not necessarily, as a matter of law, synonymous with perpetual or lifelong or unchangeable. *Soule* v. *Soule,* 4 Cal. App. 97, 87 Pac. 205. A man, for example, may have a permanent residence. This does not mean he must continue to live there his whole life. Or he may be said to have a permanent position, but this does not necessarily imply he will hold it until his death. The meaning of the word is to be construed according to its nature and its relation to the subject matter and context of the contract where it is used. *Mead* v. *Ballard,* 7 Wall. 290, 19 L. Ed. 190; *Texas & Pacific R. Co.* v. *Marshall,* 136 U. S. 393, 34 L. Ed. 385, 10 Sup. Ct. Rep. 846.

Were we, in a contract of this nature, to consider the word "permanent" as implying necessarily "existing for life," the clause would be of no practical value until after the death of a depositor, so far as disability by illness is concerned; for, until death actually occurs, there is always the possibility, even though remote, of recovery from disability caused by disease, as distinct from an accident resulting in loss of a member. After death it would be unneces-

sary, for the other portion of the clause would immediately become effective. We are of the opinion that the word "permanent," as used in the clause above referred to, means that at the time the issue is determined, it shall reasonably appear the condition will continue to exist indefinitely. In other words, applying to the present case, it must have appeared that the disability of Aldous and Odden at the time of the trial was such that it would continue for an indefinite and indeterminable period of time. In considering the question of whether the evidence supports the judgment, we are met with the situation that there are no findings of fact or conclusions of law; nor will the statement of the court at the time judgment was rendered take their place. *Deatsch* v. *Fairfield,* 27 Ariz. 387, 38 A. L. R. 651, 233 Pac. 887. Under such circumstances, our rule—repeated so often that it needs no citations to support it—is that if, under any theory of the evidence, the trial court could reasonably make findings supporting its judgment, we must presume that it did so. The appellant recognizes this rule, for he has assigned as error the failure or refusal of the trial court to make findings.

We have held that, if a request for findings of fact is not made within a proper time, the court is under no obligations to make them. *Deatsch* v. *Fairfield, supra; Morgan* v. *Krook, ante,* p. 133, 283 Pac. 287. In this case, the matter was submitted April 19th, 1928, and judgment was rendered June 30th. The request for findings was not made until July 3d.

It is urged that the presiding judge had been called in from an outside county, and therefore the proceeding of June 30th was merely a decision, under paragraph 346, Revised Statutes (Civil Code) 1913, and that judgment could not be rendered until ten days thereafter. This position cannot be sustained. Paragraph 346, *supra,* refers only to cases where the visiting judge does not return to the county of trial,

but mails his decision to the clerk of the court. If he comes back and actually renders judgment from the bench in the county of trial, the rule is the same as when the judgment is rendered by a local judge. Further, the request for findings must be made before the case is submitted for decision. *Morgan* v. *Krook, supra.* No question is raised as to demand on and proof tendered to defendant. Is, therefore, the evidence in this case such that we can say, as a matter of law, a reasonable man must have concluded therefrom that Aldous and Odden were at the time of the trial "permanently disabled," within the meaning of the definition above given? Without going into it in detail, we are of the opinion the evidence shows conclusively such disability did exist as to Aldous, but that as to Odden the issue might have been decided either way. Had the trial court found that permanent disability existed as to the latter, we should not have reversed the judgment for insufficiency of evidence; but, no such finding appearing in the record, we cannot say, as a matter of law, the judgment on the second cause of action was not supported by the evidence.

Counsel have devoted a large portion of their briefs to arguing the question as to whether or not the permanent disability on which the action is based must have arisen after the execution of the contract. The situation herein is very different from an insurance policy. In that, the insured generally warrants his condition of health at the time of the policy, and a wilful misstatement thereof, of course, invalidates the policy. Even in an insurance policy, however, if the insured discloses his condition fully and freely, and the company then issues a policy, it is valid—no matter what such condition was. But in the case at bar, there was no warranty of health, nor any provision in the contract requiring the disability must arise after its execution; and there is an excellent reason

for the difference. An insurance policy is based on the presumption that applicant is in good health at the time, and the annual premium and policy reserve are calculated on such presumption. If the applicant does not come up to the standard, the company may be seriously damaged by such failure. In a contract of the present nature, however, under no circumstances in case of disability does the company return more than it has received from the contract holder, plus ordinary interest. This contract was prepared by defendant, and if it wished to impose any limitations on its liability, other than that appearing affirmatively in the contract, it should have so stated. We are of the opinion that the ''permanent disability'' clause applies to disability arising at any time, either before or after the execution of the contract—at least, unless fraud was practiced on defendant in regard to the matter, and there is no pretense that such was the case.

For the foregoing reasons, the judgment is affirmed as to the second cause of action, and reversed and remanded for a new trial on the first cause of action, in accordance with the views expressed herein.

McALISTER and ROSS, JJ., concur.