[Civil No. 3807. Filed January 10, 1938.]

[74 Pac. (2d) 1181.]

J. R. McFADDEN, as Sheriff of Maricopa County, Arizona, Appellant, v. VERNOR M. WATSON and GLADYS WATSON, His Wife, Appellees.

Mr. John W. Corbin, Mr. Lin Orme, Jr., Mr. Henderson Stockton, Mr. Emmett R. Feighner and Mr. Eli Gorodezky, for Appellant.

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Appellees.

LOCKWOOD, J.—This is an appeal from a judgment in favor of Vernor M. Watson and Gladys Watson, his wife, hereinafter called plaintiffs, against J. R. McFadden, as Sheriff of Maricopa County, hereinafter called defendant, for the possession of a certain automobile levied upon by defendant in his official capacity, under an execution.

In order that the issue before us may be properly understood, it is necessary that we review briefly the facts not only of the present but of another action. These facts are not in serious dispute, and may be stated in a narrative form as follows:

In August, 1934, one Ivan Wyatt was in the employ of the Phoenix Fuel Company, a copartnership composed of Vernor M. Watson and H. M. Watson. On August 27th of that year, while Wyatt was in charge of the storage plant of the company, he claimed that two persons unknown to him entered the office and robbed the cash register of $55; $40 being the property of the company, and the balance belonging to him. He reported the alleged hold-up to the officers, and then at the main office of the company, where he secured more change for the cash register, and returned to the storage plant. When he went back to the main office

at the close of the day's business, he was called into a conference by Vernor M. Watson, one of the partners in the company, and there they discussed the hold-up, and he was informed that his services were no longer required. The next morning Wyatt returned to the storage plant to get a desk and some chairs which belonged to him, but when he arrived a fellow employee presented him with a note signed by Vernor M. Watson, which refused to permit him to take his property and indicated that Watson believed the robbery was not genuine, but a fake. Watson made similar charges against Wyatt several other times, and finally the latter filed a suit against Watson in four separate causes of action, alleging malicious and wanton slander and libel, and asking for both punitive and actual damages. The jury returned a verdict in favor of Wyatt for $1,000 actual and $250 punitive damages on each cause of action, being a total judgment of $5,000. This judgment was never appealed from and became final. Thereafter, under an execution duly levied by virtue of such judgment, defendant seized a certain automobile, whereupon the Watsons filed this suit in replevin to recover possession of the automobile. At the hearing before the court it was stipulated that the automobile was the community property of Vernor M. Watson and Gladys Watson, his wife. Plaintiffs then introduced the record in the libel and slander suit above referred to, and rested. Defendant then called Vernor M. Watson for cross-examination under the statute, and proved by him that he was, at the time of the alleged robbery above referred to and the doing of the various things on which the slander suit was based, a partner in the Phoenix Fuel Company, and the case was then submitted to the court. Judgment was rendered in favor of plaintiffs.

██ The real issue involved is whether or not when Vernor M. Watson did the various things on which the

action for libel and slander was based, he was acting as the agent of the community consisting of himself and Gladys Watson, or whether he was acting in his separate and independent capacity. We have held in the case of *Cosper* v. *Valley Bank,* 28 Ariz. 373, 237 Pac. 175, 41 A. L. R. 207, that community property is liable only for community debts, and not for the separate obligation of either of the spouses, but that any debt incurred during coverture is presumed to be a community debt, and it is upon those asserting the contrary to prove their contention. In that case we expressly disapproved of our previous holding in *Villescas* v. *Arizona Copper Co.,* 20 Ariz. 268, 179 Pac. 963, to the effect that community property was liable for the acts of the husband in the commission of a crime not committed in the management of the community property. And we have since consistently upheld the rule that community property could not be seized by legal process to satisfy any obligation, contractual or otherwise, incurred by either spouse which did not arise out of some act on behalf of the community.

We have always held that our community property law was more like that of the state of Washington than of any of the other community states, and that decisions from that state were very persuasive. We think the rule governing the present situation is laid down most clearly and succinctly in the case of *Floding* v. *Denholm,* 40 Wash. 463, 82 Pac. 738, 739, in the following language:

"The rule now is that community property is liable for a debt created by the husband for the benefit of the community. But such property is not liable for a debt created by a tort of either spouse, or one which is not for the benefit of the community."

And this rule has been followed repeatedly in the state of Washington.

■ It is not necessary, however, in order to bind the community, that the act which gives rise to the obligation, though tortious in its nature, shall actually *benefit* the community. It is sufficient that it was committed by the spouse with the *bona fide* intention of protecting the interest of the community, and it makes no difference that the act was a mistake in judgment —a tort so far as it affected the rights of other people and ultimately detrimental to the interest of the community. In the case of *Geissler* v. *Geissler,* 96 Wash. 150, 164 Pac. 746, 747, 166 Pac. 1119, the action was for personal injury resulting from an alleged assault, and it was urged that the assault was committed by the husband alone, so there was no liability on the part of the community. The court said:

"There is no merit in this assignment. The alleged tort may have been committed by the husband alone, but it was done in taking possession of community property and with the purpose that his act should inure to the benefit of the community. This created a community liability."

The judgment in the libel and slander case was obtained against Vernor M. Watson alone, his wife not being a party thereto. It was based upon certain acts committed by Watson individually, in which his wife in no way joined. The question, then, for our determination is whether, on the facts of the case, it reasonably appears that his actions were attributable to the community, or were his own individual tort.

■■ The trial court found the issue in favor of the Watsons, thereby holding, in effect, that Vernor M. Watson was not acting on behalf of the community in the making of the slanderous statements. It is our invariable rule of law that when there is a conflict in the evidence, we are bound by the conclusions of the trial court on that point. But where the evidence is undisputed, and the question is as to the rule of law

to be applied to such evidence, while we should give the conclusions of the trial court most serious consideration, we are not bound thereby. *Lobban* v. *Vander Vries R. & M. Co.,* 48 Ariz. 180, 60 Pac. (2d) 933.

 The evidence leads to the irresistible conclusion that the libelous and slanderous acts were done to protect the financial interest of the Phoenix Fuel Company in a controversy arising because Watson believed that Wyatt had taken $40 in money belonging to the company. Watson was a partner in the company and, therefore, in protecting its interest, was protecting his own interest, and his financial interest in the company (on his own statement of its nature) was a community one. Such being the case, we think that any act done by Watson, in this behalf, was intended for the benefit of the community, and the community must be liable for the unfortunate results thereof.

Since the only basis of the replevin suit was that the community property was not liable for the judgment on which the execution issued, the judgment of the superior court of Maricopa county must necessarily be reversed, and it is so ordered, with instructions to render judgment in favor of defendant.

McALISTER, C. J., and ROSS, J., concur.