[Civil No. 4257.   Filed January 3, 1941.]

[108 Pac. (2d) 770.]

CHARLES W. DeMUND and L. D. DeMUND, Appellants, v. ORO GRANDE CONSOLIDATED MINES, a Corporation, Appellee.

Mr. Theodore G. McKesson and Mr. Francis M. Sassé, for Appellants.

Messrs. Patterson & Eastvold, Mr. Yale McFate, and Mr. Frank E. Flynn, for Appellee.

LOCKWOOD, J.—This is an action by Oro Grande Consolidated Mines, a corporation, plaintiff, against Charles W. and L. D. DeMund, defendants, to recover damages for the destruction by fire of certain buildings upon property owned by plaintiff. The case was tried to the court sitting without a jury, which rendered judgment in favor of plaintiff for $800, which was afterwards on a *remittitur damna* reduced to $600, and this appeal was taken.

The facts necessary to a determination of the appeal, with the exception of one matter which we shall discuss at the proper time, are not in dispute and may be stated as follows: Plaintiff was the owner of certain mining claims situated in Yavapai county, Arizona. Upon these claims were a number of buildings such as are usually constructed for operating a mine. On September 17, 1937, plaintiff leased the premises to defendants. The lease is lengthy and goes into considerable detail, but only two clauses thereof are material in the present action. They are obligations placed upon defendants, and read as follows:

"8. Fire Insurance.
"To have issued and maintain during his occupancy fire insurance in favor of Lessor on all buildings and machinery now on the property and to pay premiums thereon, said fire insurance to be carried for seventy-five (75%) per cent of the amounts shown as values on the attached inventory.
"Removal of Lessees' Property.
" . . . Provided, however, that buildings, equipment, tools, etc., belonging to Lessor as shown on inventory attached hereto and made a part of this agreement, shall be left upon the property in the same condition as when received by Lessors except for reasonable wear, and in case of loss or unreasonable dam-

age Lessees hereby agree to compensate Lessor before removal of Lessees' property.''

At the time of the signing of the lease, the inventory mentioned in the clauses above set forth had not been made and was not attached to the lease. This, however, was by the mutual consent of both parties, it being understood that the inventory should be agreed upon as soon as possible thereafter. A few days before October 2d one of defendants went upon the premises, together with an insurance agent, and listed the property to be covered by fire insurance. After returning to Phoenix, they placed a tentative valuation upon the various buildings and the contents, and a copy of this listing in full detail was forwarded to plaintiff. Contained therein were the following items:

| ''Cooks | Southeast of hoist | |
|---------|--------------------|-------|
| dwelling | about 300' | 50.00 |
| ''Boarding | South of Cooks | |
| house | dwelling | 75.00'' |

The·evidence shows that the item listed as ''cooks dwelling'' was what is referred to in the pleadings as ''office building.'' On October 15th plaintiff replied to this letter, not questioning the inventory so far as the description of the property was concerned, but suggesting that the valuation on two of the buildings, one of which was the boarding house, was too low. This letter, for some reason, was not received by defendants until around 11 o'clock the morning of October 18th, while the two buildings referred to had been completely destroyed by fire during the night of the 17th, or early morning of the 18th. Defendants immediately, upon receipt of this letter, placed fire insurance on the remaining buildings. Plaintiff brought suit to recover the value of the two buildings destroyed, setting up three causes of action, the first based on negligence, the second on the general provision of the

lease, as above set forth, and the third on the nonfulfillment of the covenant to procure fire insurance. After various preliminary motions were ruled upon, the case came on for hearing. At the close of plaintiff's case, defendants moved to require plaintiff to elect which cause of action it was proceeding upon, and demurred to the complaint for improper joinder of causes of action. The court reserved its decision on these matters until the close of the case, at which time the whole matter was taken under advisement. The motion to elect was finally granted, and plaintiff standing on its second and third causes of action, the first was dismissed, and judgment rendered as aforesaid on the second.

There are a number of assignments of error, which we will consider in accordance with the legal propositions raised thereby. A number of them are based upon the fact that the complaint on which the case was tried originally joined a cause of action *ex delicto* with two causes *ex contractu,* and that under section 3748, Revised Code of 1928, which was in force at the time of the trial, actions of these natures cannot be joined.

It appears from the record that before rendering judgment, the court required plaintiff to elect on which causes of action it would stand, and that it did elect to stand on the causes of action *ex contractu,* whereupon the one *ex delicto* was dismissed, and judgment expressly rendered on one of those *ex contractu.* We need not, therefore, consider whether the preliminary rulings of the court as to misjoinder of causes of action were correct or not, for in view of the final ruling dismissing the first cause of action, defendants could not have been prejudiced even if error had been committed.

We next consider whether under the provisions of the lease there was any liability upon defendants. It will be noted that by its express terms they were required to do two things, (a) to compensate plaintiff in case of loss or unreasonable damage to any of the buildings on the premises, as shown by the inventory attached to the lease, and (b) to take out fire insurance on those buildings in accordance with the inventory. It is the position of plaintiff that these were separate obligations of defendants and that it, therefore, might sue for failure to comply with either one, while it is the contention of defendants that the special clause in regard to insurance superseded the general clause in regard to the compensation for loss or damage,. and that it was the fault of plaintiff that no insurance was taken out. In support of such contention, defendants appeal to section 1955, Revised Code of 1928, which reads as follows:

*"Destruction of buildings `terminates lease.* The lessee of a building which, without fault or neglect on his part, is destroyed, or so injured by the elements or any other cause as to be untenantable or unfit for occupancy, is not liable thereafter to pay rent to the lessor or owner thereof, unless expressly provided by written agreement; and the lessee may thereupon quit and surrender possession of such premises."

and urge that this is a declaration of public policy to the effect that a lessee is not responsible for damages to leased premises unless there is an express written agreement that he assumes such liability, and that any agreements of assumption are to be construed strictly.

We think the section is not subject to the construction placed on it by defendants. Under the common law, notwithstanding leased premises were destroyed, the tenant was still under obligation to pay rent therefor, and the section in question merely releases the tenant from that particular obligation, but

nowhere therein is anything said about whether the tenant is responsible for destruction or damage to the property, and it is expressly provided that even as far as rentals are concerned, the parties may agree to retain the common-law rule in force. We are of the opinion that the clauses in the lease involved in the present action are in no manner affected by section 1955, *supra*. There can be no question that the parties had agreed in the lease that any loss or damage to the buildings in question was at the risk of defendants. It is urged, however, that the insurance proviso was a special clause, and an exception to the general one. Under the general rule special provisions supersede general ones with which they are in conflict. But if there is no conflict, both are effective. We can see no conflict in the two provisions. The insurance provision is merely additional security for the benefit of the owner of the premises. If it were not for that, the owner could rely only on the personal liability of the lessees, and it might be that they would not be financially responsible. It is analogous to a promissory note which has been endorsed by a third person. No one would consider under such circumstances that the original maker was released by the fact that at the request of the payee he had secured an endorser. We hold, therefore, that defendants were responsible under the general clause for loss or damage.

Objection is made that no inventory had been attached at the time the lease was signed, but the conduct of the parties thereafter shows that it was understood that this should be done later, and they did, before the destruction of the buildings in question, agree upon the inventory, even though they had not agreed upon the amount of insurance which should be placed on each particular piece of property.

The only question remaining is as to the amount of the judgment. It is contended by defend-

ants that there is no competent evidence sustaining a judgment in the sum of $600. It is urged by plaintiff that upon the record the amount is under, rather than over, the true value of the buildings destroyed. Since the case was tried to the court sitting without a jury, we must assume it followed the proper legal rule as to the measure of damages, and a reading of the reporter's transcript on this subject satisfies us that there is evidence sufficient to sustain the judgment as finally rendered.

The judgment is affirmed.

McALISTER, J., concurs.

ROSS, C. J. (Dissenting).—Plaintiff's action was one to recover damages for the destruction of two of its buildings by fire, which buildings the defendants had agreed to insure in a sum equal to 75 per cent. of their value. The recovery was had on that provision of the lease in which it is stipulated

"that buildings, equipment, tools, etc. . . . as shown on inventory attached . . . shall be left . . . in the same condition . . . and in case of loss or unreasonable damage lessees . . . agree to compensate lessor. . . ."

I think this provision of the lease and the one providing for insurance up to 75 per cent. of the value of the buildings should be construed together. One is an agreement to compensate the lessor in case of loss of buildings, and the other fixes and limits the amount of the loss the lessees should be liable for after deducting insurance. The obligation to secure insurance was on the lessees-defendants, but before they could secure it, it was necessary to identify the property to be insured and to fix its insurable value. These facts should first be ascertained before the insurance was procurable. Whose duty was it under the agreement

to identify the property? I think but one answer can be made. The lessor, of course, should identify the property it is leasing in the lease. This the lessor failed to do. No inventory of buildings was attached and no insurable values shown, nor can I find in the record anywhere that it was understood that the furnishing of inventory should be done later or that it should be furnished by the lessees.

The lease does not provide how the insurable values of buildings should be determined but I think it implicit in the agreement that the parties should confer on that matter since, whatever values were placed on property, it would affect the lessor's damages and also the lessees' liability in the event of loss.

I think the loss sustained by reason of not having insurance should be borne by the one whose fault it was the buildings were not insured.

The evidence, without contradiction, shows the plaintiff did nothing toward furnishing inventory or in fixing values. It shows that on September 26th or 27th the defendant Charles W. DeMund went from Phoenix to plaintiff's mining property at Stanton, Arizona, and took along with him Russell Peabody, an insurance agent with offices in Phoenix; that he and Peabody picked up Eugene S. Upton, secretary of plaintiff, at Wickenburg, and that the three of them went upon the property and listed the buildings and placed thereon tentative values for insurance purposes; that on October 2d, at the suggestion of Eugene S. Upton, the inventory was mailed to his father, G. B. Upton, president of plaintiff, with a letter of explanation reading as follows:

"Dear Mr. Upton:
"Mr. Eugene Upton and the writer went to the mine a few days ago, with an insurance man whom I brought from Phoenix. We listed the property to be covered by fire insurance, and after returning to Phoenix we

put tentative valuations on the various buildings and contents.

"The insurance man stressed the fact that it is useless to insure for any more than an adjuster or a board of arbitration would allow in case of a fire, as heavy depreciation is applied on buildings on mining property. He helped me in the valuations on the various items, and I will appreciate it *is* you will check over the values shown on the attached sheet, making any changes that you believe to be advisable and return it to me. . . . ''

On October 13th the defendants, receiving no response, again wrote the plaintiff's president as follows:

" . . . We have not heard from you as yet in reply to our letter regarding valuations of fire insurance. Possibly you did not receive the letter. Kindly let us hear from you in this regard."

On October 15th plaintiff's president wrote defendants about the values placed on the buildings in the inventory of October 2d, in which letter he said:

" . . . Expected to see you regarding the insurance. It is all right on most of the buildings. but much too low on the boarding house and mill. . . . "

Upton, in his letter of October 15th, placed the value of the boarding house at $400 instead of $75, but made no complaint of the value of $50 for cook's dwelling. This letter was not received by defendants until October 18th and in the meantime, during the night of October 17th or early morning of the 18th, fire destroyed the two buildings that are the subject of this action.

Russell Peabody, the insurance agent, testified that at the time he went to the property he was to place insurance on it "as soon as we could determine the values as of this September date (26th or 27th). We couldn't get any values, so no insurance was placed. . . . "

From all the evidence it is apparent to me the defendants wanted fire protection; that they took the

initial steps to get it in ample time before the fire if plaintiff had exercised any diligence at all; that the reason they did not have insurance was because plaintiff neglected an unreasonable time to answer defendant's letter of October 2d and failed to co-operate with defendants in fixing insurable values or in furnishing an inventory of buildings to be insured. If it should be asked, How can it be known that defendants would have secured insurance if plaintiff had acted promptly and had co-operated in fixing values? the answer is no one can know. However, if the plaintiff had acted with diligence and the defendants had failed to secure insurance, the loss would be due to their fault and they should stand it. Here, however, defendants acted in sufficient time to have secured insurance before the fire. The insurance agent was taken to the property and had examined and approved it as a risk and was ready and willing to issue a policy when the values were agreed upon. The reason they were not agreed upon before the fire was, as I see it, the fault of the plaintiff. The defendants promptly insured the rest of the buildings upon receipt of plaintiff's letter of October 15th.

Since, clearly, it was the fault of plaintiff that no insurance was obtained before the fire, I think plaintiff's judgment should have been for the value of the buildings as found by the court, to wit, $600, less 75 per cent. thereof, the agreed insurable value, or for $150 only. A modification of the judgment to this effect, in my opinion, would be not only just but legal.