233 P.2d 837

COVINGTON et al. v. BASICH BROS. CONST. CO. et al.

No. 5446.

Supreme Court of Arizona.

July 3, 1951.

Fred O. Wilson, Atty. Gen., R. G. Lang-made, Asst. Atty. Gen., for appellants.

Stephen Monteleone, of Los Angeles, Cal., Herbert Mallamo, of Phoenix, for appellees.

DE CONCINI, Justice.

Pursuant to an advertisement for bids for road construction on the Ashfork Flagstaff Highway by the Arizona State Highway Commission in 1949, Basich Brothers, plaintiffs-appellees, submitted their bid in the manner and form provided by the commission. Accompanying the bid was plaintiffs' certified check for $30,000 payable to the Treasurer of the state of Arizona, their "proposal guarantee," i. e., as a "guarantee that plaintiff would, if awarded the contract, post a performance bond and formally execute said contract." Plaintiffs were low bidder by $44,000. One Mitchell, an employee of plaintiffs, made several attempts to have their check returned by the commission alleging that in making their bid they had overlooked various cost items. Mitchell was advised that, " * * * there was only one reason the commission would fall back on to refuse the award to Basich, and that would be failure to make bond." Mitchell then stated that if the Highway Commission would not relieve Basich

Brothers of the contract, that they would go through with it. On August 4, 1949, plaintiffs' attorney requested that Mr. Lefebvre, the State Highway Engineer, recommend a postponement in the award of the contract. Mr. Lefebvre declined to do so and said that the commission would consider the proposals and make the award on August 5. On that date the commission accepted plaintiffs' bid and notified them by mail that they had been awarded the contract. The letter was received at plaintiffs' office in San Gabriel, California, on August 8.

On August 12, the following telegram from one of plaintiffs' employees was received by the commission: "Confirming phone call to Mr. Perkins unable to return contract on Ashfork Flagstaff job by Monday 15th account R. L. and N. L. Basich have been out of town on urgent business expected back Tuesday. Respectfully ask for a few days extension of time." On the same day the commission passed and adopted a resolution which in effect stated that in the event of the failure of plaintiffs to execute the construction contract and return it within ten days from the date of the award, the commission elected to annul the award, forfeit the "proposal guarantee" to the state, and to enter into a contract for the performance of the work with the next lowest bidder. On that day the commission telephoned and wired plaintiffs advising them of the passing of the resolution. On August 20, plaintiffs received a letter written by the commission on August 17, informing them that on August 16, their "proposal guarantee" had been forfeited and that the contract had been awarded to the next lowest bidder. Thereafter plaintiffs duly filed a claim for the return of the sum of $30,000 with the commission, the State Highway Engineer, and the State Auditor. The claim was disallowed.

Plaintiffs brought an action in mandamus to have their claim approved. The matter was submitted for trial on an agreed statement of facts, the pertinent portions of which are set out above. The trial court granted plaintiffs' motion for judgment against appellants, but granted the motions of the other defendants, the state of Arizona and the State Auditor, to dismiss plaintiffs' complaint as to them. The writ of mandamus was made peremptory and the members of the commission were ordered to approve plaintiffs' claim. From that order this appeal was taken.

The respondents-appellant hereinafter referred to as the commission assign three errors which may be summarized as follows: That the lower court erred in holding that plaintiffs were entitled to the return of their $30,000 deposit, because the same had been legally forfeited to the state, and that mandamus was not the proper remedy because the action is against the state itself.

The commission points out that the *Standard Specifications for Road and Bridge Construction,* of the Arizona Highway Department which were referred to in

plaintiffs' "proposal" and which were made a part thereof, provide that the contract must be signed together with a satisfactory bond, "within ten days after the date of the award" and "failure to execute a contract and file a satisfactory acceptance bond as provided herein within ten days from date of award, shall be just cause for the annulment of the award and the forfeiture of the proposal guarantee to the state * * *." Plaintiffs, on the other hand, rely on the terms of their proposal bid which provides, "That the undersigned further proposes to execute the contract agreement and furnish satisfactory bond within ten (10) days *after notice of the award of the contract had been received.*" (Emphasis supplied). It is apparent that there is a conflict between the Standard Specifications and the "proposal." A contract will be construed most strongly against the person making it. Hoover v. Odle, 31 Ariz. 147, 250 P. 993; Aldous v. Intermountain Building & Loan Ass'n, 36 Ariz. 225, 284 P. 353; Paine v. Copper Belle Mining Co., 13 Ariz. 406, 114 P. 964; Shannon Copper Co. v. Potter, 13 Ariz. 245, 108 P. 486. In the instant case the commission prepared and supplied the forms of the "proposal" and the Standard Specifications; therefore plaintiffs have the right to rely on the proposition of law that any conflicts therein will be construed most favorably to them.

█ Furthermore the "proposal" was the instrument signed by the plaintiffs and therefore the provisions therein were specific in nature. The Standard Specifications were the overall rules under which the commission operates in letting contracts of the kind here involved; the provisions in it, therefore, may be considered to be general in nature. It is elementary that the special provision of the "proposal" would govern over the general provision of the Standard Specifications. DeMund v. Oro Grande Consolidated Mines, 56 Ariz. 458, 108 P.2d 770; Tyson v. Tyson, 61 Ariz. 329, 149 P.2d 674; 12 Am. Jur., Contracts, Sec. 244.

█ The commission here seeks to invoke a forfeiture of plaintiffs' $30,000. Generally forfeitures are abhorred in the law and the party seeking to avail himself of contractual provisions to work a forfeiture must comply strictly with all contract requirements. Glad Tidings Church v. Hinkley, 71 Ariz. 306, 226 P.2d 1016; Phoenix Title and Trust Co. v. Horwath, 41 Ariz. 417, 19 P.2d 82.

██ The lower court tried this case on an agreed statement of facts and found for the plaintiffs. There is nothing in the record to indicate that plaintiffs had notice of the award until they received notice by mail on August 8. Under the terms of their proposal they were entitled to wait until August 18 to enter into the contract. The action of the commission in forfeiting plaintiffs' "proposal guarantee" on August 12, to take effect on August 16, was therefore without sanction of law. The commission asks this court to infer from the facts.

and circumstances that the plaintiffs did have actual notice, or constructive notice, or as reasonable men, were put on inquiry. Those matters were before the lower court on an agreed statement of facts and the lower court found in favor of the plaintiffs. It is a well-settled proposition of law in this state that all intendments and presumptions are in favor of sustaining the judgment of the lower court. This court views all evidence and inferences therefrom in the light most favorable to supporting the judgment. In this case the agreed statement of facts supports the conclusion that plaintiffs had no notice until August 8th.

 The remaining question to be decided is: Is plaintiffs' action in mandamus the proper remedy?

The proposal and award were preliminaries looking toward the execution of a formal contract for the work to be performed. The commission then revoked its award so that the preliminaries were wiped out and the parties were in the same position as before the award was made. The commission had the right to revoke its award at any time before a formal contract was entered into because a contract with a public agency is not binding on the public agency until a formal contract is executed. Williston on Contracts (1936) Vol. 1, Sec. 31 says: "In the formation of public contracts the formalities required by law or by the request for bids, such as a written contract, or the furnishing of a bond, often indicate that even after acceptance of the bid no contract is formed, until the requisite formality has been complied with. * * *" See Edge Moor Bridge Works v. Inhabitants of Bristol County, 170 Mass. 528, 49 N.E. 918; Franklin A. Snow Co. v. Commonwealth, 303 Mass. 511, 22 N.E.2d 599; Camp & West v. McLin, 44 Fla. 510, 32 So. 927; State ex rel. McCormick v. Howell, 3 Boyce 387, 26 Del. 387, 84 A. 871; McFarlane v. Mosier & Summers, 157 App.Div. 844, 143 N.Y.S. 221. After the commission revoked its award to plaintiffs and awarded the contract to another bidder, the plaintiffs were relegated to the position of an unsuccessful bidder.

We believe an unsuccessful bidder would be entitled to the remedy of mandamus to secure the return of his "proposal guarantee" money because he would not have a speedy and adequate remedy at law. In an action at law he would be put to the task of suing the state and if victorious he would then have the burden of securing an appropriation from the legislature to pay his judgment. We will take judicial notice of the difficulty that might assail him, and it is probable that several sessions of the legislature would pass before an appropriation would be made. We think such a remedy would be neither speedy nor adequate.

 The next question is, did the commission have any discretion in declaring the forfeiture? In a proper case, where the low bidder refuses to enter into a formal contract and make satisfactory bond when all of the conditions of the "proposal" and

Standard Specifications have been complied with by the commission, it does have the discretion to declare a forfeiture. However, it is not mandatory that it do so because the commission has the right to reject any and all bids at any time before a formal contract is entered into. In the instant case the commission had no discretion in the matter of declaring a forfeiture effective August 16th because plaintiffs had until August 18th to enter into the formal contract. There were neither facts nor circumstances which warranted their action of declaring a forfeiture because the plaintiffs were not notified of the award in accordance with the "proposal." Such being the case, only one duty remained upon the commission, and that was the ministerial act of returning plaintiffs' deposit as an unsuccessful bidder, as provided in the "proposal."

Under the undisputed facts the State Highway Engineer, in accordance with the resolution of the commission dated August 12, deposited the money with the State Treasurer. We have herein held that the resolution of forfeiture was without sanction of law because it was premature, so that the deposit in accordance with that resolution had no effect. Sec. 10–918, A.C. A.1939, provides the manner in which moneys deposited with the State Treasurer *subject to refund* are accounted for. Public officers are presumed to do their duty; therefore the money should be in the State Treasury in accordance with the law, subject to refund, being money that had not accrued to the state. The money never ceased to be the money of the plaintiffs'; it therefore could not become the money of the state. There was a duty of trust placed on the commission regarding the deposits of all unsuccessful bidders, and that trust followed the money into the state treasury.

The State Treasurer is not a party to this action and so no writ of mandamus can be issued against him. However, for the guidance of the parties concerned we refer to the case of Calhoun v. Maricopa County Municipal Water Conservation Dist. No. 1, 37 Ariz. 506, 295 P. 785, 787. In that case the water district brought an action in mandamus to compel the County Treasurer to transfer to the credit of the district some delinquent tax penalties which had been collected by the County Treasurer for the district. In an earlier appeal of the same case, 35 Ariz. 541, 281 P. 465, the court held that the penalties in reality belonged to the district. The new County Treasurer set up as a defense in the latter reported case that the treasury was without funds to pay the district's claim. The funds in question had been deposited in the general fund of the county treasury instead of being credited to the district. The court said:

"The remedy of mandamus was not questioned throughout the proceedings, and it is not now, only incidentally in the motion to modify the writ. However that may be, we think that mandamus was the proper remedy, and it makes no difference whether

the county has converted the district's money or not. In State [ex rel. City of Cut Bank] v. McNamer, 62 Mont. 490, 205 P. 951, 954, mandamus was allowed to compel the county treasurer of Glacier county to pay over to the city of Cut funds belonging to the city but which had been diverted by the county treasurer. The court there said:

" 'The above also disposes of the point made by defendant that mandamus will not lie in the case at bar for the reason that the county treasurer, if required to pay the sum due the city, would have to take the money that was already appropriated to other funds.

" 'While we are fully aware of the rule that mandamus will not lie to compel the doing of something unauthorized by law or impossible of performance, yet in the instant case such a rule is inapplicable. In contemplation of law the city's money is still in the county treasury, and the fact that the money has been diverted by the arbitrary act of the county treasurer into some other fund or funds does not excuse the treasurer from the duty of paying the same over to the city.'

\* \* \* \* \* \*

"There is nothing to the contention of defendant that if he is compelled to pay the district its money it will violate the state budget law. Accretions of this kind are not a 'source of revenue' available to a county. It could not have been estimated as a resource of the county in making up the budget, and since under the budget law, sections 3097, 3098, Revised Code of 1928, 'no debt, obligation, or liability' could be incurred or created in excess of the budget estimates, the board of supervisors had no right to spend it."

See also City of Bisbee v. Cochise County, 44 Ariz. 233, 36 P.2d 559. Counsel for appellants admit the correctness of the above decisions but claim that they are not applicable here because there is no statute which places the duty on the commission as the statutes placed a duty on the County Treasurer in the above cases.

We believe there is a specific statutory duty upon the commission to approve the claim of the plaintiffs. The Standard Specifications which were made a part of the original "proposal" provided that the "proposal guarantees" would be returned to the unsuccessful bidders. Plaintiffs' "proposal guarantee" was deposited in the state treasury and is now held there in accordance with Sec. 10–918, A.C.A.1939, *as moneys subject to refund.* That section provides in part as follows: " * * * All disbursements from such funds and contributions shall be made by the state treasurer on warrants of the state auditor, who shall issue such warrants only upon adequate vouchers approved by the person or persons authorized to approve the disbursements. * * *". In this case the "person or persons" mentioned would be the commission or its delegated officer. Sec. 28–201, A.C.A.1939, on mandamus, provides in

part: "The writ of mandamus may be issued by the supreme or superior court on the verified complaint of the party beneficially interested, to any inferior tribunal, corporation, board, though the governor or other state officer be a member thereof, or person, to compel the performance of an act which the law specifically imposes as a duty resulting from an office, trust or station, * * * and there is not a plain, speedy and adequate remedy at law." In view of the foregoing there devolved upon the members of the commission, by virtue of their "office, trust or station" the duty to approve plaintiffs' claim for the return of their "proposal guarantee" in the sum of $30,000.

Judgment affirmed.

UDALL, C. J., and LA PRADE, J., concur.

PHELPS, Justice (dissenting).

I cannot agree with the majority opinion on either of the issues raised in this case.

In the first place neither the law nor the contract between appellants and appellee requires a written notice of the award of the contract to appellee. Secondly, it is my view that the evidence taken as a whole points unmistakably to the fact that appellee had actual knowledge on August 5th of the award being made to it. True no witness testified directly to giving notice of the award to appellee but the circumstances surrounding the facts, undeniably established by direct testimony of witnesses, are such, it seems to me, that no reasonable hypothesis than that it had actual notice of the award could be drawn therefrom. Let us look at the evidence for a moment: What are the facts tending to establish actual knowledge of appellee on August 5th of the award made to it on that date? First, its representative Mitchell was present at the highway commission office when the bids were presented to the commission by the state engineer on July 22, 1949 with his recommendations that appellee's bid be accepted. Secondly: Mitchell knew that appellee's bid was nearly $45,000 less than any other bid submitted; he knew appellee was prequalified to do business in Arizona as a road construction organization; upon inquiry he was told by Mr. Mills, estimation engineer of the highway department, that the highway commission could not do otherwise than to accept appellee's bid and that the only way appellee could be relieved from its obligation to construct the road in question was to fail to make bond and forfeit the $30,000 guarantee deposited by it with the state highway department; it knew the bids were to be awarded on August 5th; it knew it had made an error in its computation of cost; that its bid was too low; it knew that all bids would *not* be rejected as suggested by the majority opinion and consequently knew to a moral certainty that the award would be made to it. On August 4th Honorable Leslie Hardy, local attorney representing appellee,

called on the state engineer and attempted to get the date for making the award postponed. Mr. Hardy was informed that the engineer would make no such recommendations but invited him to appear before the commission the next day and make his request for postponement, to it. This he failed to do. If appellee didn't know the award would unquestionably be made to it on August 5th it would have had no interest in seeking a postponement of the award.

It is naive to even suggest that Mr. Hardy as representative of appellee, did not communicate with the highway department on August 5th and confirm what he already knew would be the fact that the award was made to appellee and that he promptly conveyed that information to appellee. Whatever else his employment as attorney for appellee may have embraced, it is certain that a part of his duties expressly related to the award of the state highway department for the construction of the road upon which appellee had submitted its bid. Will this court say in the face of these circumstances that Mr. Hardy did not discharge his duty to his client; that because no witness testified that he did do so that we must conclude that he did not inquire concerning the action of the commission the following day and that he did not inform his client of the action taken by the commission? In the light even of the most limited knowledge of human conduct and the ethics of the legal profession the circumstances surrounding this case refute such a conclusion.

If Mr. Hardy did not communicate to appellee on August 5th that the award was made to it on that date appellee was in possession of facts which mandatorily put it upon inquiry which, for the purpose of establishing its liability under its contract, is equally as effective as actual knowledge. It is stated in 20 R.C.L. under the title of Notice, Sec. 7, that: "Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. * * * Means of knowledge with the duty of using them are, in equity, equivalent to knowledge itself. Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge. * *" In Cable Piano Co. v. Lewis, 195 Ky. 666, 243 S.W. 924, 926, the court said: "* * Actual knowledge consists, not only as to what one certainly knows, but also consists in the information which he might obtain by investigating facts which he does know and which impose upon him the duty to investigate. * * *" To the same effect are Maxwell v. W. B. Thompson & Co., 175 La. 252, 143 So. 230; Tyson v. Spearman, 190 La. 871, 183 So. 201; Hutcherson v. Louisville & N. R. Co., 247 Ky. 317, 57 S.W.2d 12.

Certainly it was the duty of appellee under the circumstances to inquire as to whether it had received the award if its attorney did not inform it of that fact on August 5th. It is charged with notice of the fact that there was a variance between the language used in its proposal or bid submitted to the highway department and the uniform specifications adopted by the highway department with respect to when the ten days notice provided in the contract began to run.

If Mr. Hardy, attorney for appellee, did not make inquiry on August 5th it was his duty to do so and appellee is charged with knowledge of all the facts which such inquiry would have disclosed. 2 R.C.L. under Attorney at Law, Sec. 38, has this to say: "* * * It is the duty of an attorney at law to communicate to his client whatever information he acquires in relation to the subject matter involved in the transaction; and he will be conclusively presumed to have performed this duty, and notice to him is therefore conclusive notice to his client or principal. * * *" Citing Wittenbrock v. Parker, 102 Cal. 93, 36 P. 374, 24 L.R.A. 197. Therefore if appellee knew or by the exercise of reasonable care should have known on August 5th that it was awarded the contract it had the full ten days notice on August 15th and was in duty and in law bound to execute its contract and post satisfactory bond with the state on or before that date.

The majority seem to proceed upon the theory that the notice to appellee must be in writing. The language employed in the contract warrants no such theory. The statute does not require it. Therefore regardless of how or through what agency it received notice, it was bound to execute the contract within ten days from receipt of such knowledge.

I have no quarrel with the principles of law enunciated in the majority opinion concerning the conflict in the provisions of the uniform specifications adopted by the highway commission in 1948 and the offer or proposal of appellee relating to the time from which notice would begin to run. It is unquestionably true that the provision should be construed most strongly against the highway department who drew both the uniform specifications and the proposal submitted by appellee. As between the two documents the time as fixed in the special offer would prevail over the provision in the general uniform specifications. This is, I think, unquestionably the law. The difference of opinion apparently arises out of the factual questions: (1) When did appellee first know of the award; and (2) was such notice required to be in writing?

As pointed out above it cannot be gleaned from any part of the record the requirement that the notice must be in writing. A telephonic notice would as effectively give notice to appellee as one given through

the mail. The facts are definitely established that appellee had knowledge of every step taken by the commission leading up to the award; the date the award was to be made; the fact that appellee was the low bidder by many thousands of dollars; advice from the estimating engineer of the highway department from whom appellee was seeking to get out from under the contract, that it could not escape its obligations to go through with the contract unless it failed to give bond and to execute the contract. In other words that it must either execute the formal contract and give satisfactory bond or forfeit its guarantee. As above pointed out unless appellee knew it was to get the award there existed no reason for requesting on August 4th a postponement of the date upon which the awards were scheduled to be made. It seems clear to me from the undisputed facts and surrounding circumstances that appellee interpreted the contract all along to require that it execute the formal contract on or before August 15th. At no time did it intimate to the highway department that it had until September 18th to execute this contract. The idea that it had until August 18th is clearly an afterthought by which appellee seeks to be relieved from the obligations of its contract.

The fact is that when appellee realized it had made a serious error in its computations it never intended to execute a contract nor to make the required bond which would have, in this case, amounted to more than half a million dollars. Every act of appellee tends to establish this fact.

Its failure to execute the contract to build the highway in question compelled the state of Arizona to accept the bid of the next lowest bidder at an added cost to the state of nearly $45,000 over appellee's bid. Or in the alternative to refuse all bids which would have put the state to great disadvantage, not only from the standpoint of additional expense, which would have to be incurred, but also in securing bids in the future uninfluenced by bids originally submitted and made public.

I therefore contend that the highway commission had a lawful right on August 15th under the provisions of both the uniform specifications and the proposal or bid submitted by appellee, to declare a forfeiture of the funds deposited by the appellee as a guarantee that it would execute the final and formal contract with the state.

It seems to me to hold otherwise the court must either write into the contract something not written into it by the parties themselves or to give substance to a purely technical defense. Neither course can be justified.

The majority opinion takes the position that it is bound by the conclusions and judgment of the trial court. This would be true if the judgment was based upon a

conflict in the evidence. McFadden v. Watson, 51 Ariz. 110, 74 P.2d 1181; Grounds v. Lawe, 67 Ariz. 176, 193 P.2d 447. But where the judgment is based upon an agreed statement of facts the decision of the lower court becomes one only of law, Mollica v. Michigan Cent. R. Co., 170 Mich. 96, 135 N.W. 927, L.R.A. 1917F, 118. We have consistently held that the supreme court is not bound by conclusions of law reached by the trial court. Wilkinson v. Takesuye, 66 Ariz. 205, 185 P.2d 778. Therefore the above proposition of law upon which the court in part bases the majority opinion is unsound.

It is further my view that mandamus will not lie to enforce the terms of a contract. 55 C.J.S., Mandamus, § 56, Note 7, and cases cited; Work v. U. S., 267 U.S. 175, 45 S.Ct. 252, 69 L.Ed. 561.

The majority opinion holds that: "* * * In a proper case, where the low bidder refuses to enter into a formal contract and make satisfactory bond when all of the conditions of the 'proposal' and Standard Specifications have been complied with by the commission, it does have the discretion to declare a forfeiture. * * *" Let us observe here that the act of declaring a forfeiture and the exercise of discretion in this case are not identical by any means. The exercise of discretion included not only the declaration of forfeiture but it included the power to interpret the terms of the contract and to consider the acts of the contracting parties in the light of those terms, and from these determine whether a forfeiture should be declared, and when it was authorized under the contract to declare a forfeiture. The commission did exactly this. And upon its interpretation of the contract and the application of the facts thereto it pronounced its judgment declaring a forfeiture of the guarantee. The majority opinion says, however, that: "In the instant case the commission had no discretion in the matter of declaring a forfeiture effective August 16th because plaintiffs had until August 18th to enter into the formal contract. * * *" The commission interpreted the contract as giving it authority to declare the forfeiture on the 15th. The court interprets the contract to give authority to declare the forfeiture on the 18th. The effect of the majority opinion is that if the commission interprets the contract contrary to what this court holds it to mean it ipso facto lost the discretionary power vested in it to determine such matters. It makes the further unusual pronouncement that as a result of the erroneous judgment of the commission in its interpretation of the contract, the appellee's position automatically changed from that of a successful bidder to the position of one whose bid had been rejected. This conclusion is reached apparently to justify the use of the writ of mandamus to enforce the terms of a contract. Frankly I cannot follow this line of reasoning.

The writ of mandamus is only available to a party litigant to perform a duty required by law, the character of which is spelled out by constitutional or statutory law and where there is no plain and speedy remedy at law. Territory v. Board of Supervisors, Yavapai County, 9 Ariz. 405, 84 P. 519; Riley v. Cornwall, 48 Ariz. 10, 58 P.2d 749.

In forfeiting this guarantee the highway commission was in the exercise of a discretion vested in it by law. The writ of mandamus will never lie to compel the exercise of a discretion in a particular way. Maricopa County Municipal Water Conservation Dist. No. 1 v. LaPrade, 45 Ariz. 61, 40 P.2d 94. It will lie to compel one vested with discretion to act but it may not direct how it shall exercise such discretion. That is exactly what the court is doing here. It has assumed to interpret the contract between appellees and the highway commission and upon its interpretation together with the agreed statement of facts has come to the conclusion that the interpretation of the contract by the highway commission is wrong and the commission is now directed to accept the court's interpretation and to exercise its discretion according to our interpretation. This is an unwarranted use of the writ and finds no support in any of the authorities.

My associates would not contend that if the commission had waited until August 18th to forfeit the guarantee put up by the appellees that the forfeiture would not have been good. This recognizes the validity of the contract between the commission and appellees. Were it not for the provision therein relating to forfeiture the commission would have no authority at any time to declare a forfeiture.

If we assume that the decision of the commission to declare a forfeiture on the 15th was wrong it makes no difference in principle than if its decision had been right. It was as much an act of discretion to make a wrong decision as to make one that is correct. In neither event may that discretion be controlled by this court. The judgment of the lower court should be reversed.

STANFORD, Justice.
I concur in this dissent.